**W. D. LLOYD, Jr., and Clariece Lloyd, as statutory trustees of Noel Furniture Manufacturing Company, a Missouri dissolved corporation, Plaintiffs-Appellants,**

v.

**McDONALD COUNTY BANK, a Missouri Banking Corporation, Defendant-Respondent.**

No. 10807.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 4, 1979.

Herbert Douglas, Douglas, Douglas & Douglas, Neosho, for plaintiffs-appellants.

C. Ross Rhoades, Robert W. Evenson, Pineville, for defendant-respondent.

FLANIGAN, Chief Judge.

Plaintiffs W. D. Lloyd, Jr. and Clariece Lloyd are statutory trustees of Noel Manufacturing Co. ("Noel Co."), a dissolved Missouri corporation.

The U.S. corporation income tax return of Noel Co. for the fiscal year ending September 30, 1972, was due to be filed on or before December 15, 1972, unless an extension was obtained. The return was not filed until February 1974 and the tax ($35,-122.46) was then paid. By reason of the late filing and the late payment Noel Co. paid $13,869.54 to the government as interest and penalties.

Acting on behalf of Noel Co. plaintiffs brought this action against defendant McDonald County Bank, seeking recovery of $13,869.54, plus interest, based upon alternative theories of breach of contract and negligence.

The petition pleaded that Noel Co. deposited $125,000 with defendant pursuant to a written agreement entered into on June 19, 1972, the terms of which were incorporated in the petition. The petition further alleged that on December 15, 1972, defendant "by its agent and employee H. D. Armstrong" mailed to the Internal Revenue Service Form 7004, "Application for Automatic Extension of Time to File Corporation Income Tax Return"; that the form, which was sent on behalf of Noel Co., should have

been accompanied by a check in the amount of $36,000 in payment of income tax then owed by Noel Co.; that the accountant for Noel Co., one Brink "for and on behalf of Noel Co. directed defendant by written instruction to H. D. Armstrong to forward a check for $36,000 along with Form 7004 to the Internal Revenue Service so as to prevent penalty for failure to pay the tax on time; that defendant breached its escrow agreement by failure to remit the $36,000 to the Internal Revenue Service or in the alternative that defendant by its agent negligently failed to remit the $36,000 as directed from the escrow fund."

■ The trial court, sitting without a jury, made findings of fact pursuant to Rule 73.01, V.A.M.R., and entered judgment in favor of the defendant. Plaintiffs appeal. Appellate review of this action is governed by Rule 73.01, par. 3, as construed in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law.

Plaintiffs contend that they were entitled to the relief requested by the petition for the following independent reasons:

1. Under the terms of the agreement of June 19, 1972 ("the June agreement"), it was the duty of the bank, on December 15, 1972, to withdraw $36,000 from the escrow fund and to remit that amount, along with Form 7004, to the Internal Revenue Service. The bank's failure to do so constituted a breach of its obligation under the June agreement.

2. Form 7004 itself constituted a written instruction to defendant to remit $36,000 to the Internal Revenue Service, along with the form, and the bank was negligent in not heeding that instruction.

The only portion of the June agreement quoted and relied upon in plaintiffs' brief is the following: "For purpose of this agreement, 'claim' shall include, but shall not be limited to any and all undisclosed and/or

contingent liabilities of Noel Co., including all tax liabilities. . . ."

Plaintiffs do not point to any other provision of the June agreement to support their argument that a duty was imposed upon defendant to withdraw $36,000 from the escrow fund and send that amount, with Form 7004, to the Internal Revenue Service on December 15, 1972.

Prior to the execution of the June agreement Noel Co. had contracted to sell certain assets to Noel Products, Inc. ("Products"). The parties to the June agreement were Noel Co., Products, and defendant bank. Pursuant to the June agreement $125,000 was deposited by Noel Co. in the bank as "the escrow fund." [1]

Material portions of the June agreement are set forth marginally.[2]

After the initial deposit of $125,000 there was no deposit to or withdrawal from the escrow fund until December 24, 1972, when the first withdrawal was made.

The principal events giving rise to the lawsuit took place on December 15, 1972, during a conversation at the bank. Present at that conversation were H. D. Armstrong, K. H. Brink, and Robert Foster.

At all material times Armstrong was the president of defendant bank and was also the assistant secretary of Noel Co. It was Armstrong's testimony, undisputed by the plaintiffs, that he "functioned as assistant secretary in the preparation of various forms to pay taxes."

Brink, a public accountant, and Foster, a certified public accountant, were accountants for Noel Co. Brink "handled the tax matters" of Noel Co.

For several days prior to December 15, 1972, Foster had been working with Brink on matters pertinent to, and preliminary to, the preparation of Noel Co.'s tax return. On that date the two accountants went to the bank. They had in their possession Form 7004 which had been prepared by Foster. Form 7004 is published by the Internal Revenue Service and is entitled "Application for Automatic Extension of Time to File Corporation Income Tax Return."

1. "The term 'escrow' is generally applied to a written instrument so deposited, but the term has been applied, although technically somewhat inaptly, to money deposited to be held until the performance of a condition. 30 C.J.S. Escrows § 3, pp. 1193, 1194. We think of no real reason, in the instant case, to pursue a more apt term to be applied to money thus specially deposited." *Nash v. Normandy State Bank,* 201 S.W.2d 299, 301[4] (Mo.1947).

2. "2. *Disposition of Fund.* The escrow fund shall be held by the bank until December 29, 1972, in a non-interest bearing account separate and apart from the personal funds of the bank. If during that period no claims are made, as hereinafter set forth, the escrow fund shall be delivered to Noel Co.; if any claim is made against Products during that period or if within such time Products should discover any unpaid debt or missing asset chargeable to Noel Co., the nature and amount of such claim shall be communicated to Noel Co. in writing. *Noel Co. shall notify the bank in writing* within three days after receipt of such notice whether or not the claim or debt is valid and due. *If Noel Co. consents to payment, the bank shall pay the claim* or debt and obtain a receipt therefor. If Noel Co. disputes the claim or debt, the bank shall notify Products and shall not disburse any of the escrow fund in connection with the disputed item until such time as the bank receives written directions with re-

spect to such disputed claim or debt signed by both Products and Noel Co. If any disputed claim or debt is unresolved at the time of the expiration of this escrow agreement, the bank shall continue to hold the escrow fund until such time as such claim or debt is disposed of to the satisfaction of Products and Noel Co.

"For purpose of this agreement, the term 'claim' shall include, but shall not be limited to, any and all undisclosed and/or contingent liabilities of Noel Co., including all tax liabilities. . . ."

· "4. *Liability of Bank.* The bank shall not be bound by any agreement between Products and Noel Co. whether it has knowledge of the existence of such agreement or not, *nor shall it be required to determine the amount or validity of any claim made against Noel Co.'s business,* nor shall the bank be responsible for the sufficiency of any agreement for the payment of any claim or debt which may be made by Products and Noel Co. for such payment. . . ."

"7. *Duty of Noel Co.* Noel Co. shall take reasonable steps to pay all debts attributable to its business in accordance with the terms of the contract of sale to the end that all claims are paid without resort to the use of the escrow fund."

As a result of the conversation between Armstrong and the two accountants Armstrong signed Form 7004 *in his capacity as assistant secretary for Noel Co.* and the form was mailed that day to the Internal Revenue Service.

The basic factual dispute was whether or not, during the conversation at the bank, Brink instructed Armstrong to mail *a check in the amount of $36,000,* together with Form 7004, to the Internal Revenue Service and to do so on that day. According to the two accountants, such were the instructions given Armstrong by Brink but Armstrong, so they later determined, failed to send the $36,000 check.

Defendant's evidence, through Armstrong, was that Brink's instructions to him were to sign Form 7004, in his capacity as assistant secretary for Noel Co., and to mail it that day to the Internal Revenue Service. These instructions, as delineated by Armstrong, were obeyed. According to Armstrong he received no instructions with regard to sending a $36,000 check or withdrawing $36,000 from the escrow fund in order to do so.

The trial court in its findings of fact adopted Armstrong's version of the conversation. This court agrees with the finding of the trial court on that issue.

Plaintiffs' first contention is that the June agreement imposed a duty on the bank to withdraw $36,000 from the escrow fund and send a check in that amount, along with Form 7004, to the Internal Revenue Service.

The June agreement is not a carefully drafted document. Under paragraph 2 the bank was instructed to hold the escrow fund until December 29, 1972, and then to deliver same to Noel Co., "if during that period no claims are made as hereinafter set forth." The word "claim" is defined to include all tax liabilities of Noel Co. Paragraph 2 concerns itself basically with claims made against Products for which Noel Co. was primarily responsible. With respect to claims of that nature, the bank was under a duty to pay the claim *if* Noel Co. consented to the payment. Noel Co. was under a duty to give the bank written notice of the validity or invalidity of the claim. If Noel Co. disputed the claim, the bank had a duty to notify Products and a further duty not to make any withdrawal from the escrow fund until Products and Noel Co. agreed to that disposition.

There is nothing in paragraph 2 of the June agreement which imposed upon the bank a duty to pay a claim on its own initiative, that is, without express direction. Indeed the only provision in paragraph 2 expressly imposing a duty on the bank to pay a claim is conditioned upon Noel Co. first giving the bank written notice that the claim is valid and due.

Under paragraph 4 of the June agreement the bank was relieved from any obligation "to determine the amount or validity of any claim made against Noel Co.'s business." The bank's answer pleaded that language of paragraph 4 as justification for the bank not sending the $36,000 check and defendant's brief in this court renews that argument. Even if the determination of Noel Co.'s income tax liability to the Internal Revenue Service was possible by resorting to construction of the contents of Form 7004, a topic for later discussion, plaintiffs make no attempt to refute defendant's argument that paragraph 4 of the June agreement relieved the bank from making that determination.

Form 7004 was presented to Armstrong for his signature as assistant secretary of Noel Co. It was Armstrong's testimony that he complied with all of the instructions given him by Brink. That testimony justified the trial court in concluding that the conversation of December 15 involved a task assigned by Brink to Armstrong solely in his capacity as an officer of Noel Co. and that the conversation was totally unrelated to Armstrong's capacity as president of the bank.

Paragraph 7 of the June agreement imposed upon Noel Co. a duty to pay "all debts attributable to its business . . . to the end that all claims are paid without resort to the use of the escrow fund." That

language serves to weaken any argument that there was an implied duty on the part of the bank to pay a claim on its own initiative and without a specific request. There is merit in the bank's argument that it was entitled to assume, at least until informed to the contrary, that Noel Co. would pay a claim, including a tax liability, by means other than resorting to the escrow fund.

Whether or not paragraph 2 of the June agreement authorized the bank to make withdrawals from the escrow fund on the unilateral instruction of Noel Co. need not be decided. If paragraph 2 is subject to that construction, it appears that Products derived little protection from the arrangement. Be that as it may, *plaintiffs'* evidence was to the effect that the bank *was* authorized to make withdrawals from the escrow fund *on the specific instructions* of Brink. It was Brink's testimony that he had control "of advising Armstrong regarding certain bills for payment—what I submitted to Armstrong, Armstrong paid." Brink admitted that in February 1973 he, Brink, instructed Armstrong by letter to make two withdrawals from the escrow fund for the purpose of paying the personal income taxes of the plaintiffs and that Armstrong did so.

*Plaintiffs'* evidence showed that, in the actual handling of the escrow fund, withdrawals were made by the bank only after specific instructions had been received. In no instance was a withdrawal made on the bank's own initiative. Armstrong also testified that on each occasion when there was a disbursement from the escrow fund, it was pursuant to written or verbal instructions previously received. It is true that these withdrawals were made after December 15, 1972, but it is also true that they were made before the instant controversy arose.

■ This court concludes that neither the language of the June agreement nor the conduct of the parties in execution of it supports plaintiffs' contention that the bank, in the absence of a specific instruction, had a duty to withdraw $36,000 from the escrow fund and to remit that sum to the Internal Revenue Service.

■ Plaintiffs' second contention is that, aside from the factual issue of whether Brink gave specific oral instructions to the bank to send the $36,000 check, Form 7004 itself constituted a written instruction to the bank to do so.

The original Form 7004 which was signed by Armstrong and mailed to the Internal Revenue Service on December 15, 1972, was not introduced in evidence for the reason that it was in the possession of the Internal Revenue Service. At the trial plaintiffs introduced into evidence Exhibit B which was, purportedly, a certified copy of the original Form 7004. Exhibit B bears the certificate of the Service Center Director of the Internal Revenue Service to the effect that it is a true copy.

This court has examined Exhibit B. It is clear that Exhibit B is not a true copy of the original form. This is so because Exhibit B, a one-page document, contains on its face the following: "See instructions for depositary method of payment . . . see Instruction 9." There are no such instructions on Exhibit B and the inference is inescapable that Form 7004 had a reverse side or a second sheet containing the missing instructions.

Significantly Exhibit B does not contain any language requiring a remittance of a check to the Internal Revenue Service.

Exhibit B was prepared by the accountant of Noel Co. Line 3(d) on that Form 7004 reads: "Amount required to be deposited—at least 50 percent of line 3(c)." The blank opposite line 3(d) contains the typewritten figure $36,000. Significantly line 3(c) reads, "Balance due . . ." *and line 3(c) is left blank.*

Line 3(d) is at least open to the construction that the amount required to be deposited is satisfied if it is at least 50 percent of line 3(c). Since line 3(c) contains no amount it is arguable that no deposit was required. In any event it would be necessary to place some construction upon Exhibit B, and particularly line 3(d) thereof, and the trial

court could properly have found that the bank was relieved from any duty to construe by reason of paragraph 4 of the June agreement.

Even plaintiffs' brief acknowledges that Exhibit B is less than a clear instruction. Plaintiffs' brief says: "Examination of Exhibit B does raise questions concerning the advisability of mailing a check with the form to the Internal Revenue Service."

Certified public accountant Seideman, one of defendant's expert witnesses, testified that, with respect to the use of Form 7004, the proper procedure was not to remit any payment to the Internal Revenue Service. The correct procedure was the "depositary method of payment," which entails the use of an additional form, Form 503. Plaintiffs' accountants had not prepared Form 503 and even they did not claim that Armstrong had received any instructions with regard to the depositary method of payment. No such instructions are on Exhibit B. Witness Seideman testified that it "would be a gross mistake to hand Form 7004 to a taxpayer without instructions on what to do." Seideman also testified that there were so many irregularities on Exhibit B that he was not certain the Internal Revenue Service would have accepted the form even if it had been accompanied by a $36,000 check.

Certified public accountant Michael Cusack, a witness for the *plaintiffs,* testified that line 3(c) on Exhibit B should not have been left blank. Cusack also testified that if he had prepared Form 7004 and given it to a client Cusack would have given the client written instructions with regard to the depositary method of payment. Cusack said he could not be positive that even if Exhibit B had been accompanied by the $36,000 check, Noel Co. would have received credit and been relieved from interest and penalties. Cusack said that sending a $36,000 check with Form 7004 "is going in an irregular manner."

Although Exhibit B contains the deficiencies enumerated, plaintiffs' position is further weakened by the fact that, in an answer to an interrogatory propounded to them by defendant, they attached "Form 7004 as presented to H. D. Armstrong." The attachment to the interrogatory answer, which was introduced into evidence by defendant, is not a copy of Exhibit B.

On the attachment, line 3(c) is left blank and line 3(d) contains only a barely legible handwritten figure which appears to be $48.

Accountants for both sides testified that even if Form 7004 had been properly filled out and sent to the Internal Revenue Service on December 15, 1972, that step alone would not extend the deadline for Noel Co. to file its return and pay its income tax. The latter result would be achieved only if the depositary method had been properly followed and only if at least $18,000 was paid in that fashion on that date.

The interrogatory attachment is subject to the construction that a payment in the amount of $48 would have complied with it. Such a payment, had it been made, would not have relieved Noel Co. from the interest and penalties it subsequently incurred.

The essence of this case is that defendant, acting as a depositary under the June 1972 agreement, breached no duty imposed upon it by that agreement. In December 1972 accountants, acting for Noel Co., presented Form 7004 to Armstrong in his capacity as assistant secretary of Noel Co. The accountants had not prepared the form properly. The accountants gave Armstrong certain instructions in his capacity as an officer of Noel Co., and the trial court was justified in finding that those instructions were obeyed.

The trial court, after hearing the evidence, rejected plaintiffs' alternative theories of recovery—negligence and breach of contract. The record fully supports that disposition.

The judgment is affirmed.

All concur.