**In re the MARRIAGE OF K. K. A., Respondent,**

and

**S. D. A., Appellant.**

**No. WD 31510.**

Missouri Court of Appeals, Western District.

Dec. 2, 1980.

Kranitz & Kranitz, Theodore M. Kranitz, St. Joseph, for appellant.

Michael P. Harris, St. Joseph, for respondent.

Before PRITCHARD, P. J., SWOFFORD, J., and FLANIGAN, Special Judge.

SWOFFORD, Judge.

This appeal arises from an action to dissolve a marriage instituted by the wife–respondent here. The decree of the court below dissolved the marriage and awarded custody of a minor daughter, then 3½ years old, to the mother, with visitation rights to the father–appellant. The decree further provided that the father pay $30.00 per week as support for the child, said support to be paid into the office of the Circuit Clerk of Buchanan County. The interests of the child were represented throughout this proceeding by a duly appointed, qualified and acting guardian ad litem, and the decree awarded the guardian the sum of $400.00 for his services in the cause. The petitioner–wife was further awarded the sum of $650.00 to be paid by the husband–appellant as a contribution to her attorney fees incurred in the cause. Both parties testified that the marriage was irretrievably broken and there was no marital property involved.

The husband–appellant raises two assignments of error upon which he seeks reversal of the decree. Point I, thus raised, is in summary, that the award to the mother of the custody of the child is against the weight of the evidence in that the evidence demonstrated the unrepentant unfitness and immorality of the mother, and that the custody should have been awarded to the father, and that the finding of the court below that the father was "presently" unfit is not supported by the evidence.

Review of this cause is under Rule 73.01 V.A.M.R., as construed by the Supreme Court in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976) and subsequent opinions. The judgment below will be affirmed unless it is against the weight of the evidence or unless it erroneously declares or applies the law. One of the significant admonitions stated in *Murphy v. Carron, supra,* is that where the position is taken by the appellant that the judgment or decree appealed from is against the weight of the evidence, the appellate court should exercise caution, and the judgment should be set aside only if this Court has a firm belief that the decree or judgment is wrong.

Of course, in all cases involving the custody of children the one tantamount and

overriding principle is that any determination of that problem must be made in accordance with what appears to be the best interests of the child. Section 452.375 RSMo 1978. It is within the sound discretion of the trial court to make the initial determination of what is in the best interest and welfare of the child in a custody dispute. This is always the focal point of such proceedings. *In re Marriage of L. M.*, 541 S.W.2d 760[1] (Mo.App.1976).

With these underlying and basic principles in mind, the record in the case at bar has been carefully and thoroughly studied. It should be stated at this point that the finding of the court below that both parties are immoral is amply supported by the record and the evidence left the trial court faced with the situation envisioned in *Moore v. Moore*, 429 S.W.2d 794, 797[6] (Mo. App.1968):

> "In child custody cases the trial judge rarely enjoys the luxury of deciding between a good choice and a bad one. More often he must make a decision between two poor choices, * * * "

It was further pointed out in *Moore* that the trial court properly viewed the evidence in the light that "a 'bad' person may be a 'good' parent". (l.c. 797).

The parties herein were married on May 15, 1976 and were separated on May 30, 1978. At the time of the marriage, K. K. A., the wife, was 16 years of age, and S. D. A., the husband, was a year older. The child whose custody is here in dispute, A. L. A., was born November 11, 1976.

No good present or future purpose could be served by a detailed account of the evidence in this case, except as it bears upon the future interest and welfare of A. L. A., the little girl. Suffice it to say, that the record is rampant with partisan and contradictory testimony by members of the respective families, acquaintances, friends and by the parties themselves, from which emerges a picture of conduct and life style at odds with accepted social conduct. The husband admitted and other evidence was adduced that he was sexually promiscuous during the marriage, and after the parties were separated the wife gave birth to a son sired by a man other than her husband. Both admitted the use of marijuana during the marriage. Pertinent to the present area of inquiry, however, the following facts, substantially summarized, are to be noted:

K. K. A., the mother, was nineteen years of age at the time of trial in January of 1980. She was unemployed and received $231.00 per month in Aid to Dependent Children and $105.00 in food stamps. She, her mother, A. L. A., the child of the parties, and her infant son born in October, 1979, lived with K. K. A.'s sister and her family in a large home adequate and suitable for the needs of the group. K. K. A. paid a portion of the household expenses, shared in the household duties, and took care of her children. This record reveals that the sister and her husband and family were decent, working people, and the atmosphere of the home was suitable and a good, harmonious relationship existed in the home. The evidence was strong that a very loving and close relationship existed between K. K. A. and her daughter, and that the girl had adjusted well to and was proud of and interested in, and affectionate and helpful with her baby half–brother. K. K. A. testified that she intended to raise her son by her own efforts and with the help and cooperation of her family.

There was evidence that A. L. A. was in good health, was well fed and happy, and enjoyed going to church.

The Court Custody Investigator for the Buchanan County Circuit Court, Maxine Swyhart, testified that she had made visits to K. K. A.'s home, first her apartment, and on the last occasion at the sister's home, on June 18 and August 7, 1979, and on January 3, 1980. She stated that on each occasion she found the living quarters clean, comfortable and suitable, and the child apparently happy, content and clean. She was a sturdy, healthy little girl. She stated that on each occasion she observed that the mother and child enjoyed a very close and loving relationship. On the last occasion in January, 1980, when the little brother was

living with them, she observed the children together and stated that this was apparently a normal relationship, and the little girl seemed proud of her brother.

There was, of course, conflicting evidence on some of the above summarized proof on behalf of the appellant, but a careful review of it has convinced this Court that much of such conflicting proof was of doubtful value, and none of it would rise to the stature of carrying the weight of the evidence.

Further pursuing the evidence justifying the trial court's conclusion that the best interests of the child rested in a custody award to the mother, there was substantial proof (most of it uncontradicted) that when S. D. A., the father, left the marital home, he went to Las Vegas, Nevada. This was September of 1978. He made no attempt to see his daughter for eight (8) months thereafter and did not communicate with her or with the mother during that period of time except for one long distance telephone call.

On June 5, 1979, the father picked up the daughter where she and her mother were residing and took her to the State of Texas without advice to or consent of the mother. The father was then living in Texas and working there, and living with his parents. The child remained under this domestic situation until July of 1979, at which time the mother went to Texas and brought the daughter back to the State of Missouri surreptitiously.

Thereafter, until the date of this trial in January, 1980, the father made no attempt at regular communication with his daughter or the mother, and again failed to supply any support. At the trial of the cause, he sought to excuse such conduct upon the basis that he didn't know the residence of the wife and daughter and could not communicate with her, but that he had deposited regular amounts in a savings account in Texas for his daughter's benefit. He offered no further proof of any such account.

In the trial of the cause, the husband–father testified as follows with reference to his prospective care of the daughter, if he obtained the custody of her:

At the time of the trial, he and his 19–year old brother rented a home in Texas of which they were the only residents. He was employed by McDonald's Restaurants as a maintenance worker earning $4.50 an hour on a 40–hour week basis. The 19–year old brother did all the cooking at their home and apparently otherwise took care of the property and the living arrangements, and he also had some type of employment. The father's parents also lived in the same community and they were both full–time employees in demanding occupations. It was, therefore, the father's intention to enroll the daughter in a day care center for small children where she could be cared for five days a week. Of course, it is unquestionable that the conflicts in testimony or other contradictory proof which appears in this record were to be resolved by the trial court, and this Court must generally accept the resolution of such factual disputes made by the trial court by reason of the deference which must be accorded to the trial court's superior position to judge the credibility of the witnesses. *In re Marriage of R. R.*, 575 S.W.2d 766, 768 (Mo.App.1978); *D. I. M. v. P. D. M.*, 548 S.W.2d 237, 239 (Mo.App. 1977). Any ruling by the trial court is not lightly disturbed on appeal unless the reviewing court is convinced that the welfare of the child requires another disposition.

A review of this record convinces this Court that the judgment and decision of the trial court is not against the weight of the evidence, does not reflect any abuse of discretion nor lead to the conclusion that the judgment and decree was wrong. It was indeed a difficult decision, but this Court defers to the conclusion reached by the trial judge.

Point II in appellant's brief commands only cursory treatment. It charges the trial court with error in a trial incident wherein the court reprimanded counsel. No authorities are cited under this point. The record has been carefully studied as to this trial incident and the charge of error is without merit.

The judgment and decree below is therefore affirmed.

All concur.