**LITHKO CONTRACTING, INC.,**
Appellant/Cross–
Respondent,

v.

**John A. STEVENS and Moir B. Stevens d/b/a Sterling Management Co.,**
Respondents,

and

**Elastic Materials, Inc.,**
Respondent/Cross–
Appellant,

and

**St. Louis Hills Medical Center, Inc.,**
Intervenor/Respondent.

Nos. 71067, 71658.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 10, 1998.

Application for Transfer Denied
June 16, 1998.

Richard A. Stockenberg, Marcia Smith Niedringhaus, St. Louis, for appellant.

Albert S. Watkins, St. Louis, Timothy J. Bates, Belleville, IL, for respondent.

CRAHAN, Chief Judge.

Appellant Lithko Contracting, Inc. (hereinafter "Contractor") appeals a favorable judgment entered on its claim of breach of warranty against Respondent/Cross–Appellant Elastic Materials, Inc. (hereinafter "Manufacturer") on the issue of damages. Manufacturer cross-appeals the adverse judgment entered on Contractor's claim as well as the adverse judgment entered on the breach of warranty claim brought by Co–Respondents John and Moir Stevens doing business as Sterling Management Company and by their subsidiary corporation St. Louis Hills Medical Center, Inc. (hereinafter "Owners"). We affirm in part and reverse and remand in part.

Contractor entered into a contract with Owners for the restoration of Owners' multilevel, steel-reinforced, concrete parking garage which served the St. Louis Hills Medical Center, a medical office building in the City of St. Louis. In the course of attempting to restore the garage, Contractor applied Manufacturers' concrete surfacing product, Grip–Flex WP 1070 (hereinafter "Grip–Flex"). Grip–Flex is a polymer designed to cover concrete surfaces and protect them from water, fuel, and other harmful agents. Such polymers represent an alternative to resurfacing concrete with asphalt.

Prior to the first application of Grip–Flex to the garage, Owners had repaired the steel which supported the structure to remedy a finding by the City of St. Louis building inspector that the garage was unsafe. Contractor discussed the possibility of resurfacing the garage by means of Grip–Flex with Manufacturer and Owners separately. Contractor also showed Owners sales literature produced by Manufacturer about Grip–Flex.

Contractor and Owners entered into a contract for the application of Grip–Flex to the garage on June 28, 1991, and Contractor arranged with Manufacturer to purchase the necessary materials to complete the project. Manufacturer not only furnished Contractor with Grip–Flex and other needed supplies; its officers, Messrs. Blank and Harris, were present for its application. They also instructed Contractor's employees on the proper way to apply their product. A few days after Grip–Flex had been applied and the garage was reopened to traffic, Owners noted problems. Specifically, the resurfaced areas had already begun to tear, showed tire tread marks, and had broken away from the underlying concrete.

Eventually, Owners complaints about the 1991 application of Grip–Flex were resolved by a Court Order and Agreement in 1994 which provided that Contractor and Manufacturer would again work together to remedy the first deficient application. Manufacturer was to provide the necessary materials and supervision at the job site. Contractor was to provide materials needed for the installation of Jeene joints and labor for the application of Grip–Flex. Again, Contractor applied Grip–Flex to the garage under the supervision of Manufacturer. Owners videotaped the second application.

The second application proved unsuccessful as quickly as the first. Material used to fill cracks began floating up from the cracks, and Grip–Flex began to tear away from the underlying concrete and wash away soon after the garage was reopened to traffic. Also, a flood test revealed leaks throughout the garage. The funds Owners had deposited into escrow pursuant to the 1994 Court Or-

der which were to be paid out upon successful application of Grip–Flex were returned to them.

At trial Mr. Gartenberg (hereinafter "Expert"), who had observed the second application of Grip–Flex and had returned to observe the garage many times thereafter, testified that the Grip–Flex material was the principal reason for the failure of the two resurfacing projects at the garage. He also testified to the amount of damage the unsuccessful applications had caused the garage. Mr. Blank, sales and marketing director for Manufacturer, testified that Contractor's poor application techniques, poor construction techniques, and use of nonstandard materials other than Grip–Flex were the reasons for the failure of the two resurfacing projects.

The trial court found Grip–Flex to have been unfit for application to Owners' garage and that Contractor bore "some responsibility" for the garage's condition. Owners were awarded $224,135.25 damages from Manufacturer for its contribution to the garage's condition.[1] The trial court also awarded Contractor $16,534.50 damages from Manufacturer, "the amount [Contractor] paid" to Manufacturer for materials.

■ In its first point, Contractor claims the trial court erred in awarding damages by failing to add consequential damages to its direct losses under its contract with Manufacturer. The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

By statute, "in a proper case any incidental and consequential damages ... may also be recovered." Section 400.2–714 RSMo 1994.[2] "Consequential damages resulting from the seller's breach include any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which

could not reasonably be prevented." Section 400.2–715. Contractor claims it would have received full payment on its contract with Owners but for the failure of Manufacturer's product to adequately protect the garage.

■ The undisputed finding of the trial court was that Contractor also bore "some responsibility for the ultimate condition of the parking structure" because it "contributed to cause the damages [suffered by Owners]". Contractor incorrectly assumes that it would have been fully paid by Owners despite significant problems with its performance. "In the context of construction contracts literal and precise performance is not demanded and slight or trivial defects will not bar" recovery. *County Asphalt Paving Co. v. 1861 Group, Ltd.*, 851 S.W.2d 577, 581 (Mo.App.1993). However, the defects in Contractor's performance, specifically problems with its installation of joints and new concrete, were found by the court to have contributed, along with the ineffective Grip–Flex, to the damage done to Owners' garage. Such defects are not usually considered "slight" or "trivial." In *County Asphalt*, deviations in a contractor's performance which affected the strength and durability of its work were deemed to be significant enough to defeat substantial performance. 851 S.W.2d at 581. In the instant case, from the evidence before it the trial court could reasonably have concluded that Contractor's irregular installation of joints and new concrete arguably constituted a failure to substantially perform because these actions compromised the strength and durability of Owners' garage. Accordingly, we find no error in the trial court's refusal to award Contractor the full payment on its contract with Owners as consequential damages. Point denied.

In its second point, Contractor contends the trial court erred in failing to award prejudgment interest on its liquidated claim on its contract with Manufacturer.

■ Creditors are entitled to receive interest for all liquidated amounts due on

---

1. Owners settled their claims against Contractor before trial.

2. All further statutory references will be to RSMo 1994 unless otherwise indicated.

written contracts. Section 408.020. A "liquidated claim" for purposes of awarding prejudgment interest is one that is fixed and determined or readily ascertainable. *Schnucks Carrollton Corp. v. Bridgeton Health and Fitness, Inc.,* 884 S.W.2d 733, 740 (Mo.App.1994). Prejudgment interest on an action for breach of a written contract runs from the date of breach. *21 West, Inc. v. Meadowgreen Trails, Inc.,* 913 S.W.2d 858, 881 (Mo.App.1995).

■ The contract breached in the present case is Manufacturer's warranty of commercial fitness and durability for Grip–Flex. The trial court found, based on the failure of two applications, that the Grip–Flex was unfit. The amount Contractor had paid Manufacturer for the defective Grip–Flex, $16,534.50, is a liquidated sum because the contract between Contractor and Manufacturer set the price of the defective material. Contractor is entitled to interest at the statutory rate of nine percent per annum from the date of the failure of the Grip–Flex material, which had occurred by November 15, 1994. Section 408.020. On remand, the trial court is directed to award prejudgment interest on the amount awarded Contractor on its breach of warranty claim.

Manufacturer raises nine points of error in its cross-appeal. With respect to these points, we have reviewed the briefs of the parties and the record on appeal and find no error of law. A detailed opinion would serve no jurisprudential purpose. Manufacturer's cross-appeal is denied pursuant to Rule 84.16(b).

The judgment of the trial court is affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

CRANE, J., and CHARLES B. BLACKMAR, Senior Judge, concur.