In the ESTATE OF Bessie M. WEDDLE, Deceased.

Edith Miller and Wanda Jean Hanks, Co–Personal Representatives, Respondents,

v.

Tammy Eigenheer; and Tonya Eigenheer, Appellants Pro Se.

No. WD 60589.

Missouri Court of Appeals, Western District.

Sept. 10, 2002.

Tammy Eigenheer, Columbia MO, Tonya Eighenheer, Norwalk, IA, Appellants pro se.

Jerold L. Drake, Grant City, MO, for Respondents.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR. and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Appellants, Tammy Eigenheer and Tonya Eigenheer, appeal from the probate court's order approving the final settlement of Ms. Bessie M. Weddle's estate and refusing to hold a hearing on their objections to the final settlement. For the reasons discussed below, we reverse and remand for a hearing on appellants' objections under § 473.590, RSMo.[1]

## I. Factual and Procedural Background

Ms. Bessie M. Weddle died testate on December 23, 1998. Appellants claim an interest in Ms. Weddle's estate as residuary devisees under her will. Shortly after Ms. Weddle's will was admitted to probate, the Missouri Department of Social Services filed a class 7 claim against her estate for $31,944.33. Following a hearing on the matter, the probate court approved the State's claim, but only for $15,000.

On July 27, 2000, the estate's personal representatives submitted a petition for approval of final settlement. After distributions for attorney fees, personal representative fees, probate costs, and satisfaction of Worth County Convalescent Center's class 6 claim, the proposed settlement left only $3,222.22 to pay part of the State's $15,000 claim. The $11,777.78 balance on the State's claim remained unsatisfied.

On August 11, 2000, appellants filed a timely petition objecting to the final settlement. Some of appellants' objections involved relatively small sums.[2] Other objections involved potentially more substantial sums, but even the amounts contested in those objections did not appear sufficient to offset the State's unsatisfied claim.[3] In dollar terms, the most substantial objection involved the value of the real

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

2. Appellants objected that the estate had not accounted for a refund on a $12 safe deposit box rental and had not inventoried the contents of the box. Appellants further objected that the estate had paid $54.22 and $20.61, respectively, for a battery and service on a car that the personal representatives already had sold when they paid those sums.

3. Appellants objected that the estate had not produced a bill to substantiate $840 paid to Ms. Weddle's grandson for private nursing

care. Appellants also objected that Worth County Convalescent Center's class 6 claim was not adjusted to account for this private care. Appellants objected that co-personal representative Ms. Edith Miller failed to pay rent for between eight to twelve months while she lived in a house belonging to the estate. They did not specify the amount of rent due. They likewise objected that the estate paid $591.17 for repairs to the house while Ms. Miller lived there. Finally, they objected that the estate had failed to account for a refund on farm owner's insurance policies after the sale of the estate's real property. They did not specify the amount of the refund.

property. Appellants contended that the real property was worth perhaps $12,900 more than the amount for which the personal representatives sold it. They maintained that the county assessor's office listed the property's value at $22,000, but that the personal representatives sold the property to Ms. Weddle's grandson for only $9,100. They pointed out that the court order approving the sale was based on a $12,000 assessed value listed in the inventory and that no independent appraiser had ever confirmed that valuation. They further pointed out that the estate had reduced the property's value from the original inventory value of $15,000.

On September 15, 2000, the court held a hearing on approval of the final settlement. At that time, appellants appeared *pro se* and asked the court to hold a hearing on their objections. Appellants argued that if the court ruled favorably upon their objections, enough money might turn up to satisfy the State's claim entirely, leaving any residue for them to claim. Although the court doubted that appellants' objections would change the outcome of the settlement and pointed out that appellants had never objected to the sale of Ms. Weddle's real property before the court approved the sale, the court granted appellants a one-year extension of time to consult with an attorney before the court ruled.

On September 14, 2001, the court resumed the hearing on approval of the final settlement. Appellants again appeared pro se. At that time, appellants invoked § 473.403, RSMo as authority for conducting a hearing on their objections. While the court agreed that appellants were interested parties under the statute, the court refused to hold a hearing on the objections. The court reasoned that even if the objections were meritorious, the amounts involved would not exceed the

balance owed on the State's $15,000 judgment. The court approved the final settlement as submitted. This appeal followed.

## II. Standard of Review

■ We review the probate court's decision according to the standard announced in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

## III. Legal Analysis

### A. Statutory Authority for a Hearing

■ Appellants invoke § § 473.590 and 473.403 as authority requiring the trial court to hold a hearing on their objections to the final settlement in this case. Under § 473.590, any interested person may challenge the final settlement of an estate by filing written objections within twenty days after the filing of the final settlement. § 473.590. These written objections must "clearly state the specific grounds of objection and the modification desired." *Id.* If any interested party properly files such objections, the probate court must hold a hearing on the matter. *Id.*

Under § 473.403.2, any interested person also may challenge claims paid by the personal representative. To do so, the interested person must file written exceptions to the disputed claims within the time allowed for filing objections to the final settlement. § 473.403.2. If the interested person does so, the court likewise must hold a hearing on the matter. *Id.* At such a hearing, the estate's personal representative bears the burden "to prove that the estate was liable on the claim for the amount so paid." *Id.* If the probate court determines that the estate was not liable for any part of the amount paid, the court

must sustain the exceptions to that extent. *Id.*

For purposes of both statutory sections, the term "interested persons" means "heirs, devisees, spouses, creditors or any others having a property right or claim against the estate of a decedent being administered...." § 472.010(15). This meaning "may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved." *Id.*

Initially, we question whether § 473.403.2 applies here. Section 473.403.2 only applies to "claims." The term "claims" includes "liabilities of the decedent which survive whether arising in contract, tort or otherwise, funeral expenses, the expense of a tombstone, and costs and expenses of administration." § 472.010(3). Most, if not all, of appellants' objections do not appear to fit within this definition. Appellants do not challenge payment of the State's class 7 claim or other liabilities of the decedent.

We need not linger over this question because § 473.590 certainly contemplates objections to a final settlement such as those raised here. Although we do not find any specific reference to § 473.590 in the record before the probate court,[4] we believe that appellants have preserved their arguments regarding the application of this provision. *See In re Estate of Schnur,* 485 S.W.2d 682, 685–86 (Mo.App. 1972) (petition for "Order Directing Executors to Pay Creditor" was properly treated as objection to final settlement under § 473.590 even though it did not in so many words state that it was an objection to the final settlement). Appellants' filed a written petition unmistakably titled "Peti-

tion to Object to Final Settlement." The petition tracked the requirements of § 473.590, setting forth appellants' specific objections and requested modifications. It was "sufficiently clear and specific" to invoke § 473.590. *Id.* at 686.

**B. Interested Persons**

 Mindful of these considerations, we address whether appellants qualify as "interested persons" under § 472.010(15), thereby giving them standing to object to the final settlement under § 473.590. We have not found any Missouri case addressing the precise question presented here. On its face, however, § 472.010(15) expressly includes devisees among those deemed "interested persons." As devisees under Ms. Weddle's will, appellants, therefore, qualify as interested persons here. *Cf. Lehr v. Collier,* 909 S.W.2d 717, 724–25 (Mo.App. S.D.1995) (because § 472.010(15) expressly provides that heirs are "interested persons," heirs had standing to seek removal of personal representative even though they were not devisees or legatees under the will being administered by the representative). *See also* Francis M. Hanna, 4 Missouri Practice, Probate Code Manual § 472.010 at 15 (2d ed. 2000) ("A devisee under a will that is the subject of a will contest is, of course, an interested person in that proceeding.").

As interested persons who filed timely written objections to the final settlement, appellants in turn could compel the probate court to hold a hearing on those objections. By its express terms, § 473.590 requires that "a hearing on the matter *shall* be had." (emphasis added). *Id.* This language is plain and clear.

---

4. Appellants' "Petition to Object to Final Settlement" did not cite any statutory authority. The only reference to any statute came during the hearing on approval of the final settle-ment, at which time one of the appellants referred to § 473.403.2 as authority for the proposed hearing.

Indeed, the probate court conceded that appellants are interested parties under the statute.[5] But the court reasoned that a hearing under the statute would serve no purpose without any assets remaining in the estate. As § 472.010(15) cautions, the definition of an "interested person" may "vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved." At this stage of the proceedings, the probate court has determined that the State's class 7 claim has exhausted the estate's assets and extinguished appellants' property rights with it.

Section 472.010(15) arguably supports the probate court's focus on appellants' property rights. In a lucid consideration of the definition as it applies to heirs, Professor Hanna writes:

> Section 472.010(15) includes heirs in the definition of interested persons, but implies that it means only heirs who have property rights under the opening clause of the first sentence, "Interested persons means heirs, devisees, spouses, creditors or any others *having a property right or claim against the estate* . . . ." By equating heirs with "others having a claim or property right" it is clear that this definition assumes that "interested" heirs have some property claim or property right.

Hanna, *supra*, at 14.

This court has implicitly analyzed the definition in a similar manner. *See In re Estate of Corbin*, 66 S.W.3d 84, 90–91 (Mo. App. W.D.2001). In *Corbin*, the beneficiaries of a specific $20,000 cash devise sought to challenge the distribution of the estate's residue to a charitable trust under § 473.590. *Id.* at 88. By its express terms, § 472.010(5) mentioned these "devisees" as "interested persons." But the court con-

cluded that these devisees would not be interested parties for purposes of challenging the distribution of the residue because they were not beneficiaries of the residuary clause. *Id.* at 90. They could only challenge the distribution of the residue if the trust lapsed "such that the residue of the estate would then pass to them, in whole or in part, as intestate heirs of the decedent." *Id.* The court's reasoning in *Corbin* accords with the notion that interested parties must possess a "property right" in the estate.

But even assuming *arguendo* that the probate court properly took into consideration appellants' property rights—in spite of the clear statutory language designating devisees as "interested persons" with a right to a hearing on properly-filed objections—the court still put the cart before the horse here. Without *first* holding a hearing on appellants' objections, the court denied appellants the opportunity to present evidence substantiating their objections and the dollar amounts involved. How could the probate court summarily determine that appellants lacked any property rights when the court never held a hearing to resolve the issue? Had the court conducted the requested hearing and found that all of appellants' objections were meritorious, then the estate arguably would have had some residue left to distribute. Section 473.590 provides the mechanism for resolving this issue.

We conclude that appellants are interested parties under § 472.010(15) and that, as a result, § 473.590 expressly requires the probate court to hold a hearing on their objections. The probate court should have conducted the required hearing on appellants' objections before approving the final settlement.

---

**5.** In response to appellants' argument that they are interested parties, the trial court declared, "You are that. But you don't stand to gain anything."

## IV. Conclusion

Because the probate court erred in failing to conduct a hearing on appellants' objections under § 473.590, we reverse this case and remand with instructions to conduct the required hearing.

HAROLD L. LOWENSTEIN, P.J. and JAMES M. SMART, JR., J. concur.