Loretta M. HARVEY,
Petitioner/Respondent,

v.

Alfred D. HARVEY,
Respondent/Appellant.

No. ED 93159.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 21, 2010.

Application for Transfer to Supreme
Court Denied Oct. 26, 2010.

Application for Transfer Denied
Dec. 21, 2010.

Susan M. Hais, Robert Dennis, St. Louis, MO, for Petitioner/Respondent.

Michael A. Gross, St. Louis, MO, for Respondent/Appellant.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Alfred D. Harvey (Husband) appeals from the trial court's Judgment and Decree of Dissolution of Marriage (judgment) dissolving his marriage to Loretta M. Harvey (Wife). We affirm.

*Factual and Procedural Background*

Husband and Wife were married on September 4, 1982, and separated on April

1, 2004. On May 3, 2004, Wife filed a petition for dissolution of marriage. The trial court dissolved the parties' marriage on May 4, 2005, incorporating the parties' Separation and Settlement Agreement (Agreement) into its Decree of Dissolution (Decree). The Agreement states in pertinent part:

2.2(b) [Wife] and [Husband] agree that [13345 Buckland Hall] shall be immediately listed for sale with an agent at Coldwell Banker as their real estate agent. The parties shall follow the recommendations of their agent as to the list price, price reductions, sale price, frequency of showing said property and all other matters relating to the sale of the property.

4.1 Until the closing on the sale of 13345 Buckland Hall, [Husband] shall continue to pay all payments set forth in the PDL Judgment dated August 18, 2004 and the Amendment to the PDL Judgment dated December 17, 2004. These payments shall terminate on the date of the closing on the sale of 13345 Buckland Hall, [Husband]'s death, [Wife]'s death, [Wife]'s remarriage, or further order of the court, whichever first occurs.

4.2 [Husband] shall pay to [Wife] modifiable maintenance in the amount of $12,000.00 per month beginning the first day of the first month after the closing on the sale of 13345 Buckland Hall.

Due to difficulties created by Wife in showing 13345 Buckland Hall to prospective buyers and effectuating its sale, Allan Stewart (Stewart) was appointed by the trial court as special master in charge of selling 13345 Buckland Hall. Stewart had the property listed with Janet McAfee, Inc. (the real estate agent). Husband submitted a contract to purchase 13345 Buckland Hall. On August 2, 2007, Husband and Wife, as the sellers, and Husband, as the buyer, entered into a Residential Sale Contract for 13345 Buckland Hall. Husband received a General Warranty Deed upon closing on the property. The General Warranty Deed transfers 13345 Buckland Hall from Husband and Wife, the Grantors, to Husband, the Grantee, to-wit: "does by these presents Grant, Bargain and Sell, Convey and Confirm" unto Husband the real property known and numbered as 13345 Buckland Hall.

Wife received the sum of $92,450.58 from the sale and Husband received $68,950.57. A sales commission of $48,812.50 was paid to the real estate agent.

Stewart testified that Husband purchased the Buckland Hall property for $1,775,000.00, and, prior to Husband's offer to buy Buckland Hall, another contract was submitted by a third party in the amount of $1,750,000.00. The third party increased its offer to $1,800,000.00, which Husband did not accept.

The sale of 13345 Buckland Hall triggered Husband's contractual obligation under the Agreement to commence maintenance payments to Wife in the amount of $12,000.00 per month. On November 21, 2007, Husband filed a Motion to Modify, requesting that the trial court terminate or reduce the maintenance award to Wife. On January 30, 2008, Wife filed a Motion to Determine Sums Due and Owing and a Motion to Cite for Contempt. On October 1, 2008, October 3, 2008, and January 23, 2009, the trial court heard the parties' motions and, on May 6, 2009, entered its Findings of Fact, Conclusions of Law and Judgment (judgment), determining that the sale of 13345 Buckland Hall occurred when Husband purchased and received a General Warranty Deed for the property; and that Husband's purchase of 13345 Buckland Hall constituted a sale of the property, triggering Husband's mainte-

nance obligation as set forth in paragraph 4.2 of the Agreement. In its judgment, the trial court also granted Wife's Motion to Determine Sums Due; denied Wife's Motion to Cite for Contempt, and granted in part and denied in part Husband's Motion to Modify, reducing Husband's maintenance obligation to Wife from $12,000.00 to $10,500.00 per month. This appeal follows.

### Point on Appeal

■ Husband maintains that the trial court erred in concluding that the transaction in which Husband refinanced the existing mortgage debt of, and purchased Wife's interest in, 13345 Buckland Hall was a "sale" of the property, triggering the parties' contractual maintenance formula, because either (a) the term "sale" was unambiguous and precluded that determination in the context of the Agreement, or (b) the term "sale" was ambiguous and the court's resolution of that ambiguity was unreasonable, in that the terms of the Agreement and the evidence of circumstances attending its execution establish that the parties' intention was to defer the $12,000.00 per month maintenance award until Husband no longer was responsible for $15,000.00 plus per month cost of owning 13345 Buckland Hall.

### Standard of Review

■ The standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). This court will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32.

### Discussion

■ In interpreting a separation agreement incorporated into a decree, the normal rules of contract construction apply. *Hughes v. Hughes*, 23 S.W.3d 838, 840 (Mo.App. W.D.2000). When the language of a provision is in dispute, the court must determine the parties' intent as manifested in the document itself and not by what the parties say they intended. *Id.* This is done by giving the words of the agreement their plain and ordinary meaning as understood by a reasonable and average person. *Id.*

■ Where the parties have expressed their final and complete agreement in writing and there is no ambiguity in the contract, the intent of the parties must be determined solely from the four corners of the contract itself. *Eveland v. Eveland*, 156 S.W.3d 366, 368 (Mo.App. E.D.2004). It is only when the language of the decree is ambiguous that a court may determine the interpretation of the settlement agreement by reference to evidence beyond the face of the decree itself. *Id.* at 369. Whether a contract is ambiguous is a question of law that we determine without deference to the trial court's decision. *Id.* An ambiguity arises when, from the four corners of the contract alone, it appears that the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms. *Id.*

■ In the instant case, the plain and ordinary meaning of "sale" is "[t]he transfer of property or title for a price." Black's Law Dictionary 1200 (7th ed.1999). A sale of land, or of an interest therein, is a transmutation of such property from one person to another in consideration of a sum of money or of some price or recompense in value. 92 C.J.S. Vendor and Purchaser § 2 (2010). The term "sale" can be broadly defined as the transfer of property rights for valuable consideration. *Century 21–Johnmeyer, Inc. v. Lugar*, 813 S.W.2d

944, 946 (Mo.App. E.D.1991). In the sale of real estate, valuable consideration may include the release of a valid promissory note and deed of trust. *Id.* A sale of real property contemplates a consideration or price, a seller, a purchaser, and a delivery of the thing sold. 92 C.J.S. Vendor and Purchaser § 2.

The term "sale" in the agreement is unambiguous and has a plain and ordinary meaning. The Agreement provides: "Until the closing on the sale of 13345 Buckland Hall, [Husband] shall continue to pay all payments set forth in the PDL Judgment ... These payments shall terminate on the date of the closing on the sale of 13345 Buckland Hall...." Husband is not actually disputing the meaning of the word "sale" in the Agreement but, rather, whether or not his transaction in acquiring the 13345 Buckland Hall in his name only was in fact a sale and not merely a "refinancing." We find that it was a sale based on the following evidence in the record.

There was a mutual agreement in the form of a written Residential Sales Contract; Wife received money consideration in the amount of $92,450.58 for her interest in 13345 Buckland Hall; and transfer of 13345 from the seller to the buyer occurred at the closing by way of the General Warranty Deed. See *Burkhardt,* 295 S.W. at 840. There was a transfer of property rights in 13345 Buckland Hall from Husband and Wife to Husband, who is now the sole owner of the property, for a sale price of $1,775,000.00. *Century 21–Johnmeyer, Inc.,* 813 S.W.2d at 946.

In contrast to the position he takes on appeal, Husband testified several times at trial that he bought Wife's interest in 13345 Buckland Hall. Husband testified that he bought Wife's interest in 13345

Buckland Hall in order to sell it and make a bigger profit from the sale. Husband entered into a written Residential Sale Contract with regard to 13345 Buckland Hall and received a General Warranty Deed for it. The General Warranty Deed transfers 13345 Buckland Hall from Husband and Wife, as Grantors, to Husband, as Grantee, and states that it "does by these presents Grant, Bargain and Sell, Convey and Confirm" unto Husband the real property known and numbered as 13345 Buckland Hall. Husband and Wife as sellers of the property received proceeds of $68,950.57 and $92,450.58, respectively, from the conveyance. Husband closed upon the sale. A sales commission of $48,812.50 was paid to the real estate agent.

Although the parties to the Agreement may have contemplated a decrease in Husband's mortgage responsibility before the increase in Husband's maintenance obligation, Husband defeated that purpose by his own actions in purchasing the 13345 Buckland Hall himself instead of allowing a third party to purchase the property. Indeed, a third party had made an offer to purchase the property for $25,000.00 more than Husband did, but Husband rejected the offer. Husband's actions in purchasing the property himself do not change the fact that a sale of 13345 Buckland Hall occurred, triggering his maintenance obligations.

Based on the foregoing, Husband's point on appeal is denied.

### Conclusion

The trial court's judgment is not against the weight of the evidence, is supported by substantial evidence, and does not erroneously declare or apply the law. As such,

the judgment is affirmed.[1]

CLIFFORD H. AHRENS and
LAWRENCE E. MOONEY, JJ., concur.

---

1. Respondent's Motion to Dismiss Appeal is denied.