**Shaun M. HAUTER, Petitioner–Respondent,**

v.

**Kathleen HAUTER, Respondent–Respondent,**

v.

**Marlena BARNES, Intervenor–Appellant.**

**No. SD 30830.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 29, 2011.

James R. Sharp, Springfield, MO, for Appellant.

James R. Royce, Springfield, MO, for Respondent Kathleen Hauter.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Marlena Barnes ("Grandmother") appeals from the trial court's denial of her motion for grandparent visitation with her three grandchildren filed in the course of a dissolution of marriage proceeding filed by her son, Shaun M. Hauter, against Kathleen Hauter ("Respondents" collectively, and "Father" and "Mother" individually). Grandmother claims that the trial court erred in denying her motion for grandparent visitation in that the trial court (1) misapplied the law, by making a finding that the court had to mediate a reunification of the parties before it awarded visitation, and (2) abused its discretion in declining to find that visitation was in the best interest of her grandchildren. We affirm the judgment of the trial court.

### Facts and Procedural History

We view the evidence in the light most favorable to the judgment, giving deference to the trial court's credibility determinations. *Bryan v. Garrison*, 187 S.W.3d 900, 904 (Mo.App. W.D.2006). In that light, the evidence at trial was as follows.

Grandmother lives in Palmyra, Illinois; Father is her son. Respondents have three children, who we refer to as A, B and C with A being the oldest child and C the youngest child. Respondents were living with Grandmother in her home in Illinois at the time A was born in 2002. An incident occurred when A was about five months old. Grandmother told Mother she had to leave Grandmother's house and Mother took A to the house next door that Respondents owned and were improving. Father testified that at the time the house

did not have any "power" or "running water" and "it was getting cold." Respondents had the power and water turned on "within the week." Mother confirmed the house did not have power when she took A there. A continued to live with Grandmother for a majority of the first five years of his life.

Respondents became involved in drugs, including methamphetamine, "to the point where [they] weren't paying [their] bills," and "could not support [A] properly." When A was about two years old, Grandmother made a hotline call in Illinois based on what she perceived as Respondents' repeated abuse and neglect of A. The hotline call led to Respondents consenting to Grandmother being appointed guardian of A. The Illinois Department of Children and Family Services ultimately determined the hotline call to be "unfounded" meaning that credible evidence of child abuse or neglect was not found.

During the time Grandmother was the guardian of A, she only allowed supervised visits between Respondents and A. B and C have never lived with Grandmother, but both have spent time with her at her home. In 2006, Grandmother filed a motion to have Mother medically evaluated because Grandmother thought Mother was not right. Mother submitted to and successfully completed a mental health evaluation. Grandmother refused to return the custody of A to Respondents despite their willingness to take drug testing and change their lifestyle. Respondents were forced to go to court to restore their parenting rights. It took a year and a contested court hearing to end the guardianship. B was born in 2006. Guardianship and custody of A was returned to Respondents in 2007; Grandmother was awarded visitation with A. Respondents then moved to Missouri with A and B. C was born in Missouri in 2007.

On July 18, 2009, during a visitation with her grandchildren, Grandmother made a second hotline call in Illinois that Father had sexually abused three-year-old B. She did not contact Father prior to placing the hotline call. After the hotline call, Respondents refused to permit Grandmother to see her grandchildren. The hotline call also was determined to be unfounded or unsubstantiated.

In the period before July 18, 2009, A had visited Grandmother in her home every four to six weeks and spent a week or two with Grandmother in the summer. B and C also visited Grandmother in her home on occasion, and Grandmother called and talked to the grandchildren on occasion as well. Although Grandmother testified she was "not trying to prove that [Respondents] are unfit or continue to abuse the children at all," she would not admit at trial that Father and Mother were good parents.

The children are aware of the conflict between Grandmother and Respondents. Father testified that, if the court granted Grandmother visitation, the visitation should be supervised because "I don't trust her putting things in their head." Father did not believe it would be in the best interest of his children to have contact with Grandmother because he believes she has told A things that are not true, that Grandmother's intention is to "get one of my children one way or the other—legally or illegally," and the hotline calls have an adverse effect on his children. Father has never seen Grandmother physically abuse his children in any way.

Mother also did not believe it was in the best interest of her children to have contact with Grandmother because she believes "there is the possibility" Grandmother will "continue to create" situations that cause the children "turmoil, strife and emotional distress," and "to possibly think

ill of their parents." Mother also testified that, on several occasions, she believed Grandmother drank beer when she was watching A before Grandmother became A's guardian. Mother further recalled that she found A playing with a pesticide bottle on one occasion when Grandmother was watching A.

The guardian ad litem for the grandchildren recommended Grandmother be granted supervised visitation with her grandchildren for an afternoon every ninety days in the Springfield, Missouri area, and indicated "maybe" Grandmother's visitation could be expanded in the future.

The trial court denied Grandmother visitation based in part on its findings that:

7. When asked to consider grandparents' visitation the Court must determine if such contact is in the best interest of the subject children. In the present case, the Court does not find such contact to be in the best interest of the minor children; therefore, [Grandmother's] request for Court ordered visitation should be denied.

8. The Court does find the existence of long term discord between [Father] and [Grandmother] and [Mother] and [Grandmother]. The Court believes there are a number of factors contributing to this ongoing animosity. Furthermore, the Court believes that [Father], [Mother] and [Grandmother] have all contributed to the problem and no party has taken reasonable steps to mend the relationships.

With this said, it is not this Court's position or duty to mediate a reunification between [Respondents and Grandmother], even if to do so might eventually benefit the minor children. This Court finds that the ongoing problems have resulted in a situation where [Grandmother] does not have a relationship with the subject children. The

Court does not believe that placing the children in the difficult relationship between the parties, if even on the periphery, would be in their best interests.

## Standard of Review

We will affirm the judgment of the trial court in a court-tried matter unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Keeran v. Myers*, 172 S.W.3d 466, 468 (Mo.App. S.D.2005). Errors in applying the law are reviewed *de novo. See East Hills Condominiums Ltd. Partnership v. Tri–Lakes Escrow, Inc.*, 280 S.W.3d 728, 733 (Mo.App. S.D.2009); *Keeran*, 172 S.W.3d at 468.

■ We defer to the trial court's factual determinations, and determinations of witness credibility. *Keeran*, 172 S.W.3d at 468. Absent an abuse of discretion, we defer to the trial court's assessment of what is in the best interest of a child in determining whether or not a grandparent should be granted visitation with the child. A trial court abuses its discretion only when its decision is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* at 468.

## Analysis

### A. The Trial Court Applied the Law Correctly

■ In Grandmother's first point, she argues "the trial court's conclusion that it had to mediate a reunification between the parties before it could award Grandmother visitation rights and could not find that it was in the best interests of the children to award Grandmother visitation because of her poor relationship with the parents misapplied the law." Central to this argu-

ment is Grandmother's contention that "[t]he trial court found that it was in the best interests of the children not to allow Grandmother visitation solely based upon the fact that there was conflict between Mother, Father and Grandmother," and "the fact that there is conflict between the family members in these cases is a given and cannot, in and of itself, be a reason to deny a grandparent visitation rights with her grandchildren, if that is in the best interests of the grandchildren."

We agree with Grandmother that a proceeding to establish grandparent visitation rights pursuant to § 452.402 RSMo [1] normally will involve conflict between a grandparent and a parent as visitation by a grandparent with a grandchild normally would be arranged without the necessity of requesting judicial intervention when there is no conflict between the grandparent and parents of the child. We do not interpret, however, the trial court's ruling as a conclusion that it declined to find visitation with Grandmother was in the best interest of Grandmother's grandchildren solely because there was conflict between Grandmother and Respondents, or that the trial court had to mediate a reunification between Grandmother and Respondents before visitation could be awarded to Grandmother.

In fact, the trial court specifically noted that it was "not [its] position or duty to mediate a reunification between" Grandmother and Respondents. The trial court also noted it "must determine if ... contact [with Grandmother] is in the best interest of the subject children," and concluded it "does not find such contact to be in the best interest of the minor children." The trial court continued, "the ongoing problems [between Grandmother and Respondents] have resulted in a situation where [Grandmother] does not have a relationship with the subject children. The Court does not believe that placing the children in the difficult relationship between the parties, if even on the periphery, would be in their best interests." Section 452.402.2 provides in part "[grandparent v]isitation may only be ordered when the court finds such visitation to be in the best interests of the child."

■ We interpret the trial court's findings and conclusions to mean that the trial court declined to find that visitation with Grandmother would be in the best interest of her grandchildren, and one of the reasons it declined to so find is because visitation would put the children at risk of being used as weapons in a battle between Grandmother and Respondents that could damage the children mentally or emotionally.[2] Though requests for grandparent visitation pursuant to § 452.402 normally will involve conflict between a grandparent and a parent, not all requests will involve grandparents and parents who cause or allow their personal conflicts with one another to be communicated to a grandchild with the intention of swaying the grandchild's view of the grandparents and parents. There was some evidence that personal conflicts between Grandmother and Respondents had been communicated to the children in this case in the past with the intention of swaying the children's

1. All references to statutes are to RSMo Cum. Supp.2010, unless otherwise specified.

2. Though the trial court did not make a finding that uses this specific language, we believe we are justified in interpreting the trial court's judgment in this manner because the interpretation is supported by substantial evidence and consistent with the trial court's other findings and with the result reached in the judgment. "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c) (2011); *Corley v. Corley*, 128 S.W.3d 521, 525–26 (Mo.App. W.D.2003).

view of the persons involved, and that evidence provides a logical basis for believing similar conduct may occur in the future. In addition, not all requests for grandparent visitation pursuant to § 452.402 will involve the level of family conflict present in this proceeding. The court was entitled to consider the evidence that Grandmother made serious allegations of abuse that proved to be unsubstantiated and refused to admit that the parents were adequate parents. It was within the court's prerogative to believe that Grandmother had maliciously made unsubstantiated hotline calls against the parents. We believe the trial court's conclusions are a valid application of the grandparent visitation rights statute. Grandmother's first point is denied.

*B. The Trial Court Did Not Abuse Its Discretion In Declining To Find Visitation With Grandmother Was In the Grandchildren's Best Interest*

■ In her second point, Grandmother argues that the trial court "abused its discretion in denying [Grandmother] visitation rights with her grandchildren." We interpret Grandmother's claim to be that the trial court abused its discretion in declining to find that visitation with Grandmother would be in her grandchildren's best interest.[3]

We cannot say the trial court's finding was clearly against the logic of the circumstances then before the court and was so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. As we have mentioned, the level of family conflict in this case was high, and there was some evidence personal conflicts between Grandmother and Respondents had been communicated to the children in the past with the intention of swaying the children's view of the persons involved. These facts provide a logical and reasonable basis for the trial court's refusal to find that visitation with Grandmother was in the grandchildren's best interest. Grandmother's second point is denied.[4]

The judgment of the trial court is affirmed.

3. We also note this interpretation is supported by the last sentence on page 3 of Grandmother's Reply Brief, which states in part, "there was evidence that grandparent visitation would be in the children's best interests and the trial court's finding to the contrary was clearly 'against the logic of the circumstances' and should be reversed."

4. Grandmother refers us to our decision in *Keeran v. Myers*, 172 S.W.3d 466, 468 (Mo. App. S.D.2005), as support for her argument that the trial court abused its discretion in declining to find visitation with Grandmother was in the best interest of the grandchildren in this case. In *Keeran*, the trial court, based on evidence quite similar to the evidence in this case, found that parents unreasonably denied a grandmother visitation with the grandmother's grandchildren. We affirmed the trial court over the parents' claim that the trial court's finding was not supported by substantial evidence and was against the weight of the evidence. We believe the standard of review explains the difference in the outcome in *Keeran* and the outcome in this case. As an appellate court, our review of trial court judgments is limited. In *Keeran* and in this case, it was for the trial court to determine the credibility and sincerity of the parties and the best interest of the grandchildren involved. Even if we disagreed with a trial court's determination of these questions, we are required to affirm that determination in the absence of an error that permits review and reversal on appeal. The trial court made these determinations in favor of the grandmother in *Keeran* and in favor of the parents in this case. We affirmed in *Keeran* and we affirm in this case because neither trial court erred in a manner that permits review and reversal on appeal.