**Lucille V. MURPHY, Respondent,**

v.

**Cecelia CARRON and Paul Carron, Appellants.**

**No. 59167.**

Supreme Court of Missouri, En Banc.

May 5, 1976.

John A. Schneider, Hillsboro, for appellants.

Mrs. Alice L. C. Kramer, Brunson, Hollingsworth & Associates, Hillsboro, for respondent.

DONNELLY, Judge.

In this court-tried case, Lucille V. Murphy seeks to recover money which she asserts was loaned by her to Cecelia Carron and Paul Carron. The trial court entered judgment in favor of plaintiff and against defendants in the amount of $9,100. The Carrons appealed to the St. Louis District of the Court of Appeals, which affirmed. The cause was transferred here by order of this Court. We decide the cause "the same as on original appeal." Mo.Const., Art. V, § 10.

We ordered the transfer of this case and two other cases (*In re Novak*, Mo., 536 S.W.2d 33; and *Roth v. Flieg*, Mo., 536 S.W.2d 39) primarily to consider and put to rest as soon as possible questions which have arisen about the scope of review in court-tried civil cases since the revision of our Rule 73.01, effective January 1, 1975.

Before its revision, Rule 73.01(d) provided, in part, that on appeal of a case tried by the court without a jury:

"The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. *The judgment shall not be set aside unless clearly erroneous*, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." (Emphasis added.)

In the revision, the italicized portion of the rule was deleted.

Rule 73.01, as revised, provides in subdivision 3, in part, that on appeal of a case tried by the court without a jury:

"(a) The court shall review the case upon both the law and the evidence as in suits of an equitable nature.

"(b) Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses."

It is suggested, on the one hand, that by deletion of the words italicized above, the Court abandoned the "clearly erroneous" standard of review and adopted a "de novo" standard of review. It is suggested, on the other hand, that Rule 73.01 still requires that review be "as in suits of an equitable nature" and that the "clearly erroneous" standard is an essential part of the scope of review of suits of an equitable nature.

We must recognize that the law in Missouri as to the scope of appellate review of suits of an equitable nature is in a state of confusion, largely as a result of an attempted use of *de novo* and *clearly erroneous* in the same standard of review. Those interested will find the cases in Vol. 3A, Missouri Digest, Appeal and Error,

It is essential now that the Bench and Bar of Missouri be given some sense of direction on the question.

■ Accordingly, appellate "review * * * as in suits of an equitable nature," as found in Rule 73.01, is construed to mean that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and with a firm belief that the decree or judgment is wrong. The use of the words *de novo* and *clearly erroneous* is no longer appropriate in appellate review of cases under Rule 73.01.

On November 18, 1970, Lucille V. Murphy and Cecelia Carron went to the Tower Grove Savings and Loan Association. Lucille V. Murphy drew out $10,000 in the form of a cashier's check and signed it over to Cecelia Carron. Cecelia Carron endorsed the check and deposited it in a joint account held in the Pevely bank with her husband Paul Carron. The money was expended through two payments to building contractor Ralph Williams for remodeling the Carron home in Pevely.

*Was the transaction, in legal effect, a loan or a gift?*

■ In the case of *In re DeGheest's Estate*, 362 Mo. 634, 646, 243 S.W.2d 83, 90 (1951), this Court defined a "loan" as "the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use; and if such be the intent of the parties the transaction will be deemed a loan regardless of its form."

The evidence is conflicting. The trial court considered the transaction a loan and not a gift. We have reviewed the evidence and defer to the findings and conclusion of the trial court.

*Was the loan an installment loan or a demand loan?*

■ Cecelia Carron, after testifying that Lucille V. Murphy actually gave her the check at a restaurant where they went to eat after they left the Tower Grove Savings and Loan Association, further testified as follows:

"Q. Did you say anything to her at that time in regard to payment back of the money?

"A. Yeah. I'd told her before and I told her that day too.

"Q. What did you tell her?

"A. I told her that I appreciated it very much, the help that you've given me, and that I was going to, willing to pay her back the hundred dollars a month as long as I was able or I could.

"Q. What did she say in response to that?

"A. She said that—well, she actually didn't want to because she felt like she wanted to give this to me. But, I insisted in telling her that she might need the money later on."

We are of the opinion this was a demand loan because there was no agreement as to the time of payment. The general rule is that " * * * when no time is fixed for the payment of a debt, the debt is payable on demand * * *." *Diehl v. Council of Zion Evangelical Lutheran Church,* 162 Pa. Super. 167, 56 A.2d 113, 115 (1948); *White v. Meiderhoff,* 281 S.W. 98, 99, 100 (Mo.App. 1926).

*Was a demand for payment made?*

■ The evidence is undisputed that an attorney, in behalf of Miss Murphy, made demand for payment of the loan; and that at the time of demand, a total of $900 had been paid Miss Murphy.

*Did Paul Carron participate in the borrowing of the money or in the promise to repay?*

■ Lucille V. Murphy testified as follows:

"Q. All right. And Mr. Paul Carron, did you have any conversation with Mr.

Paul Carron about this money and the payment of it?

"A. Yes, Mr. Paul Carron came down and gave me a big kiss for giving it to them."

Paul Carron testified as follows:

"Q. Mr. Carron, did you have any conversation with Mrs. Murphy prior to this check being presented to your wife?

"A. Not prior, no.

"Q. You weren't there at the bank or the restaurant or anything like that? A. No, I was not.

"Q. All this was between your wife and Mrs. Murphy, is that correct? A. Yes, that's true."

We have reviewed the record and must conclude that Paul Carron did not participate in the borrowing of the money or in the promise to repay. There is ample evidence that he benefited from the transaction. The money delivered by Lucille V. Murphy to his wife, Cecelia, was used to improve their home. The receipt of such benefits by Paul Carron would be relevant if recovery were sought under an implied agency theory. Cf. *Dierks & Sons Lumber Co. v. Morris,* 404 S.W.2d 229 (Mo.App. 1966); *Kaufmann v. Krahling,* 519 S.W.2d 29 (Mo.App.1975); *Murphy v. Olds,* 508 S.W.2d 249 (Mo.App.1974); *E. C. Robinson Lumber Co. v. Lowrey,* 276 S.W.2d 636 (Mo. App.1955). However, we must take the evidence and the case as we find it. No assertion has been made at trial or on appeal that Paul Carron should be held liable on an implied agency theory. In any event, the evidence adduced in this case is not sufficient to sustain such a theory of recovery.

The judgment is affirmed as to Cecelia Carron and reversed as to Paul Carron. The cause is remanded with directions to enter judgment in favor of plaintiff and against Cecelia Carron in the amount of $9,100.