**Arthur Wayne LAMBERT, Petitioner/Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent/Appellant.**

No. 66609.

Missouri Court of Appeals, Eastern District, Division One.

May 2, 1995.

Jeremiah W. (Jay) Nixon, Atty. Gen., Rodney P. Massman, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Joseph S. Rubin, Clayton, for respondent.

REINHARD, Presiding Judge.

The Director of Revenue (Director) appeals from the circuit court judgment reinstating petitioner's driving privileges after a trial *de novo*. We reverse and remand.

Pursuant to the procedures set forth in §§ 302.500–302.540 (RSMo 1986 and Supp. 1993), the Director suspended petitioner's driving privileges following her determination that petitioner was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in his blood was 0.10% or more. *See*, § 302.505.1, RSMo Supp.1993. Subsequently, the Director sustained the suspension on administrative appeal. Petitioner thereupon petitioned for trial *de novo* with the circuit court as permitted by § 302.535, RSMo 1994, and the *de novo* court reversed the order of suspension.

At the *de novo* hearing, Officer Tim Harris of the Kirkwood Police Department testified.

He said that on the night of December 27, 1993, he was in a Quicktrip convenience store when someone informed him of a possible intoxicated driver asleep in his vehicle approximately a half-mile away on the shoulder of Highway 44. The informant told Officer Harris that the car's dome light and brake lights were on. Officer Harris informed the dispatcher and proceeded in his patrol car onto the highway to investigate. One or two minutes after receiving this information, Officer Harris spotted a blue Camaro on Highway 44 with its dome lights and brake lights on. The driver had his head down. As Officer Harris approached, the Camaro pulled onto the highway without signalling.

Officer Harris followed the Camaro which drove slowly (35–40 m.p.h.) onto the Lindbergh Boulevard off-ramp. Officer Harris turned on his emergency lights, but, the Camaro did not pull over. The Camaro proceeded to a stoplight on Lindbergh. When the Camaro attempted to get back on Highway 44, Officer Harris turned on his siren, and the Camaro pulled over.

Officer Harris approached the driver (petitioner) and detected a strong odor of intoxicant. Officer Harris also observed that petitioner's eyes were bloodshot and his speech was slurred. Beer cans were present inside the vehicle. Petitioner was asked to exit the Camaro. He swayed as he stood. He submitted to field sobriety tests and performed unsatisfactorily. Officer Harris placed petitioner under arrest. At the police station, petitioner was given a breathalyzer which revealed his blood alcohol content to be 0.158%.

Petitioner testified that on the evening in question, he was following his boss's son home on Highway 44 when he lost sight of him. He pulled over to the shoulder, hoping that his boss's son would pass from behind him. Petitioner claimed to have had transmission problems with his vehicle and submitted into evidence a receipt from a mechanic showing that his car had work done on its clutch that day. When petitioner's boss's son did pass, petitioner asserted he had difficulty getting his car into gear. He opened his car door to turn on the dome light so he could see his gearshift. Eventually, he got

the car in gear and decided to discontinue following his boss's son and return to work instead. He pulled onto Lindbergh Boulevard to turn around when he noticed Officer Harris's patrol car signalling for him to pull over.

On cross-examination, petitioner freely admitted consuming beer that evening. He even admitted drinking beer while on the shoulder of Highway 44.

The court found for petitioner and ordered the Director to reinstate his driving privileges. The court found that petitioner's blood alcohol content while he was driving exceeded .10%. However, the court stated the controlling issue as follows:

So it all boils down to whether or not that officer had probable cause to make an arrest for driving while intoxicated. Of course, he had—After he was stopped, I think he had probable cause with the field sobriety tests and so on; but we get back to whether or not the officer had a reason to stop him in the first place. That's what it all boils down to.

The court held there was a "lack of probable cause for the arrest for driving while intoxicated."

We recently held in *Gordon v. Director of Revenue*, 896 S.W.2d 737 (Mo.App.1995) that neither the United States nor Missouri Constitutions nor the revocation and suspension provisions of §§ 302.500–302.540 requires the Director to show probable cause for a stop in order to institute a revocation or suspension. The Director has the burden of showing probable cause for arresting the driver for an alcohol related driving offense, she does not have the burden of showing probable cause to believe a driver was violating an alcohol related driving offense prior to making an investigatory stop. "The alleged illegality of or lack of probable cause for the stop does not affect the admissibility of observations stemming from that stop in a civil revocation proceeding." *Id.* at 740. The trial court erroneously declared and applied the law by requiring the Director to show "whether or not the officer had a reason to stop [petition-

er] in the first place."[1]  We therefore reverse the order of the trial court reinstating petitioner's driving privileges and remand the cause with instruction that the trial court sustain the Director's revocation. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *see, Reinert v. Director of Revenue*, 894 S.W.2d 162, 165 (Mo. banc 1995).

Reversed and remanded.

GARY M. GAERTNER and CRAHAN, JJ., concur.

**1.** In light of our resolution on this issue, we need not address whether the stop of petitioner was based on probable cause or was otherwise legal, an issue both parties lengthily briefed.