DANIEL E. SCOTT, J.
Carl and Margarita Smith owned motel property subject to a mortgage that Respondents purported to foreclose over the Smiths’ objection. The Smiths sued. The parties’ lawyers quickly explored settlement, reached agreement, and circulated settlement documents which the Smiths refused to sign.
Respondents moved to enforce the settlement. After an evidentiary hearing, the court granted the motion and entered judgment accordingly.
The Smiths appeal, raising three points. We affirm.
Background[1]
Paul Hasty represented the Smiths at all times; Rod Loomer facilitated negotiations on Respondents’ behalf. To quote the judgment, the settlement terms “are not in dispute,” but
a general understanding of those terms is important for further consideration of the issues. The settlement agreement contemplated a “walk away” deal. The substance of the agreement was set forth in Attorney Hasty’s letter of August 22, 2012, addressed to Attorney Loomer, which proposed, inter alia,
... Great American can consider the loan paid and release the mortgage on the property thereby vesting title in the Smiths free and clear of any interest of the bank or Great American.
These terms were accepted by Defendants, as was communicated by Attorney Loomer in his letter dated August 24, 2012, to Attorney Hasty. The settlement terms were again confirmed by Attorney Hasty’s letter to Attorney Loomer dated August 30, 2012, referencing recent telephone conversations. No money was going to be exchanged as part of the settlement.
Hasty later testified that he had discussed settlement with Carl Smith, and the August 22 letter “was my understanding of *703 my authority from Mr. Smith.”[2] Hasty did not discuss settlement directly with Mrs. Smith, who from Ukraine, was not a native English speaker, and would direct Hasty to “talk to Carl” when Hasty would call her about the case. “So,” as Hasty explained, “rather than Mrs. Smith telling [Hasty] or speaking with [Hasty] about the case, it was her direction for [Hasty] to go to Carl Smith.”
Sometime in September, after Hasty had copied the Smiths on the August 22 offer letter and his August 29 and 30 letters confirming settlement, Mrs. Smith returned to Ukraine and stayed there until late October.
A week after Loomer circulated formal settlement documents for execution, Hasty reluctantly reported that his clients were “no longer willing to settle the case on the terms previously agreed.” Seven weeks post-settlement, after Respondents moved to enforce, Carl Smith suggested for the first time that his wife never agreed to settle and he “had no authority to speak for her on the issue.” Hasty then sent Loomer two mid-October letters, reiterating that Hasty “thought a settlement agreement was reached” and “I’ve made it very clear to you that I thought we had the case settled,” but his clients were “taking the position that counsel did not have authority to enter the agreement that was entered. I certainly thought I did, but that was based on an assumption that Mr. Smith was speaking for Margarita Smith.”
Hasty, Loomer, and both Smiths testified at the November 19 enforcement hearing. That a settlement had been reached was “not in dispute,” to quote the Smiths’ post-hearing brief. Yet they denied being bound, arguing that Mrs. Smith was not consulted and had not agreed to settle the case. Secondarily, they argued the statute of frauds, a non-pleaded defense first mentioned after all testimony and evidence had been admitted at the hearing.
The court rejected both arguments. As indicated above and not challenged on appeal, the court observed that the Smiths “squarely admit that their attorney indeed reached an agreement to settle the dispute.” The court then found that Hasty had authority to represent both of the Smiths and negotiate a binding settlement on their behalf. Finally, the court found that the statute of frauds did not bar enforcement. After entry of a final judgment, the Smiths brought this appeal.
Standard of Review / Points on Appeal
As the Smiths repeatedly acknowledge, we can reverse this bench-tried judgment only if no substantial evidence supports it, or it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). It thus seems self-evident that the Smiths should identify the specific Murphy claim they assert as to each of their points, preferably within the point itself. See Rule 84.04(d)(1)(A) & (B) (points shall identify the challenged actions and “the legal reasons for the appellant’s claim of reversible error ... ”).
Why? Because each Murphy ground is a separate, distinct legal claim. That is, “an ‘against-the-weight-of-the-evi *704 dence’ analysis which is distinctly different than a claim that a judgment is not supported by substantial evidence,” J.A.R. v. D.G.R., 426 S.W.3d 624, 680 (Mo. banc 2014), obviously differs also from claims that the trial court erroneously declared or applied the law. In turn, this means each Murphy ground is proved differently from the others and is subject to different principles and procedures of appellate review.[3]
None of the Smiths’ points expressly identify a Murphy ground. This is no real problem as to Points II and III (plainly complaints that the trial court misapplied the law), but the Murphy claim is less obvious in Point I:
The trial court erred in finding that Plaintiffs’ attorney had either actual or apparent authority to negotiate a settlement of the claim on Plaintiffs’ behalf because Plaintiffs’ attorney did not have such authority in that Plaintiffs did not authorize their attorney to do so, nor did Plaintiffs themselves agree to the purported settlement.
To reiterate, we can reverse only on a Murphy ground, each of which differs from the others both as to proof and appellate review. Ultimately, we read Point I to assert that no substantial evidence supported the trial court’s fact findings, necessary to the judgment, as to Hasty’s authority. Our interpretation rescues the point so we can review it,[4] but the underlying complaint still fails for several independent reasons next summarized.
Point I — Authority
The Smiths’ first and fundamental problem is their failure to effectively assert a “no substantial evidence” claim. See J.A.R., 426 S.W.3d at 631 n. 12; Houston, 317 S.W.3d at 186-88.[5] Instead, their “argument on this point ignores the testimony and evidence favorable to the circuit court’s findings and conclusions and merely recites evidence and purported inferences favorable to [their] position.” J.A.R., 426 S.W.3d at 632. “Not only does [this] argument ignore our standard of review, it ignores the law that the circuit court can believe all, part, or none of the testimony of any witness.” Id. at 631 (footnote omitted). “It seems obvious, from the findings and conclusions contained in the judgment, that the circuit court put little or no stock in various factual assertions made by [the Smiths],” id. at 632 n. 14, who now fail “to identify favorable evidence in the record or explain why *705 that evidence and its reasonable inferences are such that the court could not reasonably decide that [Hasty had authority]. Without any of this analysis, [the] argument lacks any analytical or persuasive value.” Id. at 6B1 n. 12.
In summary, Point I initially fails because its argument “ignores the testimony and evidence favorable to the circuit court’s findings and conclusions and merely recites evidence and purported inferences favorable to [its] position,” disregards our standard of review, and is “of no analytical or persuasive value.” Id. at 682.
To support a favorable decision for [the Smiths] on this point would require this Court to devise and articulate its own demonstration of how the omitted favorable evidence, either by itself or considered along with the partial favorable evidence included by [the Smiths] in their argument, is not substantial evidence .... Such action on our part would thrust us into becoming an advocate on [the Smiths’] behalf; a role we are prohibited from assuming.
Houston, 317 S.W.3d at 189.
We often see the error addressed in J.A.R. and Houston and repeated here by the Smiths. It may aid future appellants if we try to restate certain principles in simplest terms.
We are one-sided when we check the record for sufficiency of evidence. We ignore everything that could help the appellant, seeing only what might help the respondent. The resulting slant can be so severe that we rarely follow this particular rule (even when we cite it) strictly when we write our statement of facts. Outside readers require more context to understand a case, so our opinions often cite facts that we cannot consider in deciding if any evidence supports the judgment.
Our tunnel vision is driven, not by credibility per se, but relevance. Consider a shopping analogy. If we need a red shirt, we ignore other colors. Nothing is wrong with other shirts, but they do not fit our need. They are not relevant to our search. Salespersons who show us other shirts, not appreciating our specific need, waste their time and ours.
Likewise, in seeing if any evidence supports a judgment, contrary proof is irrelevant. And if evidence does support the judgment, no amount of counter-proof erases it. This is why a “no substantial evidence” argument focused on proof and inferences that favor the appellant, while minimizing those favorable to the judgment, disregards our standard of review and is “of no analytical or persuasive value.” J.A.R., 426 S.W.3d at 632. This is the first reason that the Smiths’ Point I argument fails.
Even if we ignore that problem, Hasty was presumed to have settlement authority, the Smiths bore a “substantial burden” to overcome that presumption, and the issue was one of fact. Eaton v. Mallinckrodt, Inc., 224 S.W.3d 596, 597, 598, 599 (Mo. banc 2007). After an eviden-tiary hearing (“[b]y far the most desirable approach,” id. at 599), the trial court found this fact issue against the Smiths.
Kenney is instructive. There, as here, the client’s attorney of record filed pleadings and negotiated a resolution with opposing counsel. 277 S.W.3d at 721. Consistent with our supreme court’s Eaton observations, the Kenney court noted that “authority is presumed to be present in the client’s attorney of record and where the attorney undertakes negotiations with the opposing party.” Id. “Thus, [counsel] had prima facie authority to settle the claims; [the client] consequently bore a *706 heavy burden to rebut this presumption.” Id.
Our courts have only permitted parties to avoid settlements concluded by their attorneys where the evidence has failed to raise this presumption of authority, or where the fact-finder is truly convinced authority is lacking.... The trial court is free to believe or disbelieve a client’s testimony about an attorney’s authority. The trial court’s order shows it was not convinced authority was lacking in [the client’s] attorney of record. [The client] failed to rebut the presumption of [counsel’s] authority to settle his [claims]; we see no basis to disturb the trial court’s findings.
Id. (citations omitted). The same can be said in this case.
Finally, even if we further ignore the presumption, we cannot condemn the trial court’s finding of authority if we “view the evidence in the light most favorable to the trial court’s judgment and disregard all contrary inferences and evidence,” id. at 720, and recall a trial judge’s right to “disbelieve a client’s testimony about an attoimey’s authority.” Id. at 721.
The argument that Mrs. Smith never authorized settlement fares no better. “In the husband-wife context, one spouse cloaks the other with apparent authority to act on his or her behalf if the facts and circumstances surrounding the transaction give rise to a reasonable and logical inference that the non-acting spouse empowered the acting spouse to act for him or her.” Cohn v. Dwyer, 959 S.W.2d 839, 843 (Mo.App.1997), quoted in Rosehill Gardens, Inc. v. Luttrell, 67 S.W.3d 641, 647 (Mo.App.2002). See also Stoner v. Director of Revenue, 358 S.W.3d 514, 520 n. 12 (Mo.App.2011).
Hasty, who represented and had dealt with both spouses, clearly believed Mr. Smith also spoke for his wife in rejecting Respondents’ first offer and authorizing the August 22 counteroffer that Hasty conveyed and Respondents promptly accepted. Such was “a reasonable and logical inference” from the record as we must view it, including Hasty’s testimony and Mrs. Smith’s “talk to Carl” directions when Hasty would call her about the case. Moreover, the trial court heard Mrs. Smith testify, knew English was not her first language, and could reasonably infer (like Hasty, apparently) why she might direct her lawyer to deal with Mr. Smith instead.
We need not list all evidence or inferences supporting the court’s finding of authority. At least some evidence of record supports it and the trial judge was in the best position to decide that issue. Parks v. MBNA Am. Bank, 204 S.W.3d 305, 313 (Mo.App.2006).
For each and all of these reasons, Point I fails.
Point II — Statute of Frauds
Although Point II cites the statute of frauds, no such claim was preserved. See Norden v. Friedman, 756 S.W.2d 158, 162 (Mo. banc 1988) (failure to plead statute of frauds or object to trial testimony regarding oral contract constitutes waiver); Stander v. Szabados, 407 S.W.3d 73, 80 (Mo.App.2013).
The Smiths did not plead or otherwise raise the statute of frauds prior to the enforcement hearing; even had they done so, “failure to object to the testimony of the oral agreement would waive any protection of the statute.” Crawford v. Detring, 965 S.W.2d 188, 192 (Mo.App.1998); see also Owen v. Hankins, 289 S.W.3d 299, 304 n. 7 (Mo.App.2009); Sheinbein v. First Boston Corp., 670 S.W.2d 872, 879 (Mo.App.1984). That is what happened. All settlement testimony and evidence was ad *707 mitted at the hearing without any statute of frauds objection, resulting in waiver.
Whether the defense was waived, as we find, or failed on the merits as the trial court found, the outcome is the same. We are more concerned with a correct result than the route taken to reach it. Missouri Soybean Ass’n v. Missouri Clean Water Comm’n, 102 S.W.3d 10, 22 (Mo. banc 2003). We will affirm if a judgment “is correct on any ground supported by the record, regardless of whether the trial court relied on that ground.” Id. Point denied.
Point III — Mortgage Release
Finally, the Smiths allege that Respondents have not released their mortgage as the judgment requires, but fail to show why Rule 74.07 does not offer an adequate remedy.[6] We deny Point III and affirm the judgment.
NANCY STEFFEN RAHMEYER, P.J., concurs in result in separate opinion.
WILLIAM W. FRANCIS, JR., C.J., concurs and files separate concurring opinion.

. We summarize the background as we must view it on appeal, i.e., most favorably to the trial court’s judgment, disregarding all contrary inferences and evidence. Kenney v. Vansittert, 277 S.W.3d 713, 720 (Mo.App.2008).

. This letter actually was a counteroffer which began by rejecting Respondents’ initial offer. We quote the salutation and opening paragraph:
Dear Mr. Loomer:
I’ve had the opportunity to talk to Mr. Smith about the offer that was extended, i.e. Great American would release any claim on the property as long as the Smiths paid the $41,000.00 balance alleged by Great American. That offer is declined.

. For example, in "against the weight of evidence” claims, we must "defer to the trial court's credibility determinations, explicit or implicit,” and can reverse "only when we firmly believe the judgment is wrong.” Mitchell v. Mitchell, 348 S.W.3d 816, 818 (Mo.App.2011). "Where a misapplication of law is asserted, our review is de novo." Jackson v. Mills, 142 S.W.3d 237, 240 (Mo.App.2004). For differences in proof and review of "no substantial evidence” vs. "against the weight” claims, see J.A.R., 426 S.W.3d at 630; Houston v. Crider, 317 S.W.3d 178, 186-89 (Mo.App.2010). For further support that these are distinct legal claims, see J.A.R., 426 S.W.3d at 630 n. 10 and cases cited therein.

. Tipping the scales for us are assertions in the brief's Point I argument that "the only evidence is such that Mr. Hasty did not have express authority to bind Plaintiffs to the purported settlement agreement,” and "there is no evidence that Mrs. Smith was consulted about or agreed to the settlement agreement, precluding any conclusion that Mr. Hasty had apparent authority to do so. Therefore, authority — both actual and apparent — was truly lacking here.” Having discerned a Murphy complaint "from the argument portion of this point relied on, we shall address the issue raised.” Jones v. Jones, 285 S.W.3d 356, 359-60 n. 5 (Mo.App.2009).

.Indeed, this point would fail even if we viewed it as an "against the weight” claim. See Houston, 317 S.W.3d at 187-89.

. Quoting that rule in pertinent part:
If a judgment directs a party to execute or deliver a deed or other document or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court, and the act when so done has like effect as if done by the party. On application of the party entitled to performance, a writ of attachment or sequestration shall issue against the property of the disobedient party to compel obedience to the judgment. The court may also adjudge the party in contempt.