

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| M.L.T., | ) | |
| a Female Minor Child, | ) | |
| | ) | |
| D.W.B. and C.S.H.B., | ) | |
| | ) | No. SD33557 |
| Petitioners/Appellants, | ) | Filed: May 21, 2015 |
| | ) | |
| vs. | ) | |
| | ) | |
| M.D.T., | ) | |
| | ) | |
| Respondent/Respondent. | ) | |

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Larry G. Luna, Associate Circuit Judge

## AFFIRMED

C.S.H.B. ("Mother") and D.W.B. ("Adoptive Father"), appeal from a judgment entered by the Juvenile Division of the Circuit Court of Christian County ("trial court") denying a petition for adoption of M.L.T. ("Child"), by Mother and Adoptive Father (collectively "Adoptive Parents").

## Facts and Procedural History

We defer to the fact-findings of the trial court, and consider all evidence and inferences in the light most favorable to the judgment. *In re G.C.*, 443 S.W.3d 738, 740-41 (Mo.App. S.D. 2014). We recite the facts according to this directive.

In September 2006, Child was born to Mother and M.D.T. ("Father), who were unmarried. Father had a continuing, but irregular relationship with Child for the first six months of her life. During the first two months, Father saw Child every Sunday. For the next four months, Father lived with Mother and saw Child almost every day. During this time, Father provided necessary support for Child in the form of diapers, formula, and contribution to daily expenses.

In March or April 2007, Father moved out. About the same time, Mother learned of pending criminal charges against Father, and thereafter prevented Father from having any contact with Child.

Since March 2007, Mother consistently prevented Father from having contact with Child, and kept Child from learning of Father's existence. Mother allowed Father's parents to visit Child, but it was understood that if Father's parents told Child of Father, Mother would terminate any contact between Father's parents and Child.

In September 2007, Father was arrested for sexual assault involving an adult. Father pled guilty and was placed on five years' probation. Thereafter, Father was arrested for various check-related and stealing offenses and up to the time of the trial of this matter, Father was in and out of several correctional facilities. Father attempted to attend Child's first birthday party, but Mother called law enforcement as she knew Father had outstanding warrants against him.

In December 2007, Mother was granted an adult abuse order of protection against Father, expiring in December 2009, based on events Mother admitted occurred over a year and a half prior to December 2007, and prior to the birth of Child.

On August 29, 2008, a judgment of paternity was entered establishing that Father was the biological parent of Child. Mother was awarded sole legal custody and primary physical custody of Child, subject to Father's rights of supervised visitation as set forth in the parenting plan. Father was to pay Mother the sum of $327 per month as child support for Child.

In June 2010, Father's probation was revoked and he was incarcerated. Father was still incarcerated at the time of trial in this matter.

While incarcerated in 2010 and 2011, Father wrote Mother two letters and made multiple phone calls to Mother regarding Child. One of the letters asked Mother about possible contact with Child during his incarceration. Mother wrote back to Father denying this request. Thereafter, Mother refused to communicate with Father or allow Father to interact with Child in any manner.

In 2011, Mother contacted prison authorities and accused Father of making harassing phone calls to her. Father ceased communications with Mother after he was advised that if he contacted Mother again, he would be placed in segregation.

On March 31, 2012, Mother married Adoptive Father. When Child started kindergarten in August 2012, Mother enrolled Child using Adoptive Father's last name. When Father's mother questioned Mother about the use of Child's "new" name, Mother terminated grandmother's access to Child.

On October 17, 2012, Adoptive Parents filed a "Petition for Adoption" alleging Father had, for a period of at least six months prior to the filing of the petition for adoption, willfully

3

abandoned Child by substantially and continuously neglecting to provide Child with necessary care and protection. On November 13, 2012, Father filed his objection to Adoptive Parents' petition for adoption.

A bench trial was conducted on May 22, 2014. The trial court concluded that Adoptive Parents failed to prove that Father willfully abandoned Child or willfully, substantially, and continuously neglected to provide Child with necessary care and protection although having the ability to do so. The trial court concluded the evidence supported the judgment that Father had been incarcerated for a substantial portion of Child's life, except for her first year. During that first year, Father provided infrequent financial and emotional support to Child, who was unaware Father was her biological father. After Child's first birthday, Father's ability to provide necessary care was limited by his incarceration and the actions and inactions of Mother. The trial court concluded that Adoptive Parents had failed to establish abandonment or neglect and denied the petition for adoption. This appeal followed.

**Analysis**

In their sole point, Adoptive Parents contend:

THE TRIAL COURT ERRED WHEN IT FOUND THAT APPELLANTS FAILED TO PROVE RESPONDENT WILLFULLY ABANDONED HIS CHILD OR WILLFULLY, SUBSTANTIALLY AND CONTINUOUSLY NEGLECTED TO PROVIDE HIS CHILD WITH NECESSARY CARE AND PROTECTION HAVING THE ABILITY TO DO SO.

In court-tried cases, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 815 (Mo. banc 2011) (citing *Murphy v. Carron*, 536 S.W.2d 30 (Mo banc 1976)). "[A] substantial-evidence challenge, a misapplication-of-law challenge, and an against-the-weight-of-the-evidence challenge . . . are

distinct claims[, and] must appear in separate points relied on in the appellant's brief to be preserved for appellate review." ***Ivie v. Smith***, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014) (internal quotations and citations omitted).

In their point relied on, Adoptive parents do not identify which, if any, of the ***Murphy*** grounds they contend encompass the alleged trial court error. An examination of Adoptive Parents' argument section in their brief yields no clear indication on which ground Adoptive Parents' argument is based. Both of these failures contravene principles summarized in ***Smith v. Great American Assur. Co.***, 436 S.W.3d 700, 703-04 (Mo.App. S.D. 2014).

Additionally, Adoptive Parents fail to make *any* citations to the record in support of the factual assertions in their argument section in violation of Rule 84.04(e),[1] which provides that "[a]ll factual assertions in the argument shall have specific page references to . . . the legal file[] [or] transcript[.]"

Adoptive Parents' statement of facts is also in violation of Rule 84.04(c) in that it omits relevant facts in the record that support the trial court's judgment and sets forth evidence contradictory to the trial court's judgment—"[t]he statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument." Rule 84.04(c). "An appellant may not simply recount his or her version of the events, but is required to provide a statement of the evidence in the light most favorable to the judgment." ***In re Marriage of Smith***, 283 S.W.3d 271, 273 (Mo.App. E.D. 2009). "An appellant's task on appeal is to explain why, even when the evidence is viewed in the light most favorable to the respondent, the law requires that the judgment of the trial court be reversed." ***Id.*** at 273-74.

---

[1] All rule references are to Missouri Court Rules (2014).

Compliance with Rule 84.04 is mandatory, and failure to submit a brief which complies with Rule 84.04 is grounds for dismissal of an appeal. *Studt v. Fastenal Co.*, 326 S.W.3d 507, 507-08 (Mo.App. E.D. 2010). Compliance is necessary to assure judicial impartiality, judicial economy, and fairness to all parties. *Id.* Compliance with Rule 84.04 also ensures that the record and arguments are sufficiently developed such that appellate courts do not become advocates by speculating on facts and on arguments that have not been made. *Id.*

While we stop short of dismissing Adoptive Parents' appeal, the defects in their brief substantially hamper the efficacy of their argument. The appellant has the burden of showing trial court error, and we will affirm unless appellant meets that burden. *Muza v. Muza*, 451 S.W.3d 326, 328 (Mo.App. W.D. 2014). Adoptive Parents had the burden of proof at trial to convince the trial court that Father's parental rights should be terminated. The trial court could disbelieve any, all, or none of Adoptive Parents' evidence, *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 627 (Mo. banc 2014), and the trial court, based on its own credibility determinations, concluded that Adoptive Parents did not meet their burden of proof.

Given the numerous Rule 84.04 violations in Adoptive Parents' brief, and the fact that our standard of review prevents us from crafting arguments for Adoptive Parents not made by Adoptive Parents themselves (thereby becoming an advocate), we must affirm.[2] Point denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., C.J./P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concurs

DANIEL E. SCOTT, J. - Concurs

---

[2] *Ex gratia*, we note that "imprisonment of a parent does not per se constitute abandonment." *In the Interest of A.R.M.*, 750 S.W.2d 86, 89 (Mo.App. E.D. 1988) (en banc). While the reason for a person's imprisonment is a factor for the trial court's consideration, *id.*, Adoptive Parents' brief does not, under our standard of review, demonstrate that there was prejudicial error below on that basis, which would constitute grounds for reversal.