

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M.W.; | ) | |
| | ) | **WD85122** |
| Juvenile, | ) | |
| | ) | **OPINION FILED:** |
| JUVENILE OFFICER, | ) | |
| | ) | **November 22, 2022** |
| Respondent, | ) | |
| v. | ) | |
| | ) | |
| S.E.W., | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable Jalilah Otto, Judge**

**Before Division Two:**
**Lisa White Hardwick, P.J., Thomas N. Chapman and Janet Sutton, JJ.**

S.E.W. (father) appeals the disposition judgment of the Jackson County juvenile court assuming jurisdiction over S.M.W. (the child) under section 211.031, placing the child in Children's Division care and custody and ordering the parties to participate in certain services.[1]  On appeal, father does not contend that the juvenile court erred in assuming jurisdiction over the child.  Father argues the juvenile court erred by appointing a guardian ad litem to represent him at the neglect proceedings and in ordering him to participate in certain services without consideration of his disability in

---

[1] Statutory references are to RSMo (2016), as supplemented, unless otherwise indicated.  Rule references are to the Missouri Supreme Court Rules (2022).

violation of Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973. We affirm the judgment.

## Factual and Procedural Background[2]

The child was born on December 11, 2008. The child lived with J.M.M. (mother) when in July 2021, the Juvenile Officer filed a two-count petition alleging that the child's mother and father neglected him.[3] The child was discharged from a mental health facility and mother would not retrieve him, instead telling father to take the child in, which father did not do. Therefore, Children's Division initiated the neglect proceeding because the child had nowhere to live and no appropriate caretaker.

---

[2] The Juvenile Officer filed a motion, which was taken with the case, to strike portions of father's appendix for failing to comply with Rule 84.04(h). Specifically, over 700 pages that purport to be government publications containing, what father believes, "almost two decades' worth of context illustrating the indignity and injustice [father] and other members of his protected class have suffered at the hands of the State" because of Children's Division's "systemic and pervasive" violations of federal anti-discrimination laws. None of these documents were introduced as exhibits in the juvenile court.

Rule 84.04(h) requires the submission of an appendix, which includes the judgment appealed from, "[t]he complete text of all statutes . . . [and] rules of court . . . claimed to be controlling as to a point on appeal"; it also allows the inclusion of "other pertinent authorities." However, "the authorized record on appeal is the firm boundary of our consideration—materials cannot be shoehorned into the record via the appendix, and such attempts may be stricken by the reviewing court." *Sharp v. All-N-One Plumbing*, 612 S.W.3d 240, 244 (Mo. App. W.D. 2020) (citation omitted). "Inclusion of improper documents in an appendix defeats the value of the appendix and increases the amount of paper the court must manage in attempting to locate the relevant and pertinent material in an appendix." *Washington v. Blackburn*, 286 S.W.3d 818, 822 (Mo. App. E.D. 2009).

> Rule 84.04(h) does not authorize the inclusion of evidence outside the record of appeal . . . The mere inclusion of documents in an appendix to a brief does not make them part of the record on appeal . . . We cannot and will not consider documents outside the record.

*Sharp*, 612 S.W.3d at 244 (citations omitted).

Father responds that the challenged portions of his appendix are both "pertinent" and "authorities" that qualify for inclusion under Rule 84.04(h).

We agree with the Juvenile Officer that portions of father's appendix fail to comply with Rule 84.04(h). Father cites to those portions of the appendix in an attempt to bolster and support his argument that Children's Division and other child welfare agencies engage in systemic discrimination based on an individual's disability and that father was discriminated against. None of these documents were introduced in the juvenile court matter and these do not qualify as "other pertinent authorities" under Rule 84.04(h). Accordingly, we grant the Juvenile Officer's motion to strike portions of father's appendix, specifically, the pages numbered A047-A776.

[3] The record is unclear on father's involvement with the child during this time period, other than the fact that father resided separately in an apartment complex that did not allow children.

2

In mid-July 2021, the juvenile court held a protective custody hearing and father appeared by telephone. The Juvenile Officer recommended appointment of a guardian ad litem (GAL) for father because "[h]e's currently under a guardianship and has been deemed incapacitated for legal purposes." The probate court in 2014 previously entered a judgment of incapacity and disability and appointed father's mother, the child's paternal grandmother, as his chapter 475 guardian and conservator. The following exchange occurred when the juvenile court ordered a GAL to represent father in the neglect proceeding:

> [Juvenile Court]: Okay. Well, it's my understanding that you currently . . . are under a conservatorship or guardianship in a different matter. Is that accurate?
> [Father]: Uh-huh.
> [Juvenile Court]: Okay. So, what I'm going to do is appoint a guardian ad litem. That's someone who will kind of help you through this process and represent your best[] interests. Okay?
> [Father]: Okay.

The juvenile court ordered the child remain in protective custody and in Children's Division's temporary legal custody for appropriate placement, and allowed mother and father supervised visitation with the child. Although father initially declined the appointment of trial counsel, the juvenile court later appointed trial counsel at a case management conference.

The parties appeared for adjudication in mid-September 2021 and the Juvenile Officer filed an amended petition that same day. In count one, the Juvenile Officer alleged that mother neglected the child. In count two, the Juvenile Officer alleged that father was unable to care for the child, father was under an adult guardianship due to his "limited mental capacity," and father's residence did not allow children. With

3

respect to both counts, the Juvenile Officer alleged that the child was at risk and in need of the court's intervention.

Mother stipulated to count one in the amended petition, that she neglected the child. Specifically, mother stipulated that she did not pick the child up from mental health facilities when he was discharged, that while the child lived with her in 2020 he was not enrolled in school, he was not getting regular mental health treatment as needed, that she expressed concerns about the child returning to her home, and that the child was at risk and in need of placement.

Count two in the amended petition alleged that father was under an adult guardianship because of his "limited mental capacity," that father admitted to Children's Division that his residence did not allow children, and that the child was without an appropriate caregiver and therefore at risk without the court's intervention. Father's attorney requested a continuance for father to complete a psychological evaluation to assess his competency as it related to entering into a stipulation for purposes of adjudication and disposition in the neglect proceeding, which the juvenile court granted.[4]

The juvenile court held an adjudication hearing on count two in October 2021. The juvenile court took judicial notice of father's guardianship case and received copies of the following exhibits from the probate guardianship case into evidence at the Juvenile Officer's request: the guardianship petition, mental examinations completed by both the State and father as part of the competency findings in an

---

[4] The record does not show whether father completed the psychological evaluation before adjudication.

associated criminal case,[5] the letters of guardianship, and the docket entries. The juvenile court took judicial notice of the probate court's finding that father was totally incapacitated and totally disabled by means of his mental condition, that he was unable to care for himself and his financial resources, but that he retained his voting and driving rights. Further, Juvenile Officer's exhibit 2, father's competency exam, established that father was diagnosed with intellectual disability mild (intellectual developmental disorder)/mild mental retardation and functioned on a first-grade level.

A Children's Division investigator testified that father was unable to provide a home for the child as father had stated he lived in an apartment building that did not allow children. The investigator testified that father's adult guardianship did not "play into the decision at all to get the court involved with [the] family" and that "the court was involved because the child was without an appropriate caretaker to take care of him and take placement of him."

During arguments to the court, father's GAL stated that father "continues to be unable to care for the child" and that mother's actions led to the initiation of the case. Father's GAL stated that father "had always been unable to do it. That was the reason the child was with the mother, because that was the person who was able to do it." Father's GAL argued that father did not abuse or neglect the child because father believed mother was providing a home for the child and that he was unable to do so given his own circumstances.

The juvenile court noted the following:

---

[5] In a 2012 criminal case, the State charged father with first-degree statutory sodomy and attempted first-degree statutory sodomy for conduct related to a five-year old female. Father was found incompetent to proceed, and after a guardianship was established, the State dismissed the criminal case.

> [A]n illness or incapacity is not a basis alone to determine that a child is in need of care or for the determination of neglect. There has to be a nexus between that illness and whatever harm could or has resulted. So I'd like to look at this a little bit longer.

The juvenile court then concluded that because of mother's stipulation to count one in the amended petition, the court had jurisdiction over the child. The court also concluded it would take count two, the neglect count related to father, under advisement. The parties agreed to proceed to disposition.

The court held a dispositional hearing over two days in October and November 2021. During disposition, a Children's Division caseworker testified that while she was on the case, neither father nor his guardian made any requests for accommodation for his disability, but if father or his guardian had made a request, then Children's Division would have afforded any reasonable accommodations to assist father in completing services.

Additionally, the caseworker testified that Children's Division had a previous preponderance of evidence finding from 2012 against father involving digital penetration of a five-year-old child.[6] Therefore, the caseworker was concerned about the child's contact with father, given that the child was sexually acting out with his sister, he was exhibiting concerning sexual behaviors at school, and that Children's Division received information from the child's mother that an unknown man previously sexually abused the child in 2012 or 2013.

The current caseworker, who worked on the case for approximately two months, testified that she did not have contact with father's chapter 475 guardian since she

---

[6] Not the child at issue in this case.

began working on the case, and that the chapter 475 guardian did not contact her.[7]  The caseworker stated that it would be appropriate for her to route her communications with father through his chapter 475 guardian and that future Children's Division's instructions should be given to that legal guardian.  The caseworker testified that father's chapter 475 guardian was allowed to schedule his psychological evaluation on father's behalf, but the chapter 475 guardian did not do so.  The caseworker also affirmed that she intended to discuss father's disability with parent aides to assist them in providing father the best services pertaining to his disability.  Finally, the caseworker affirmed that Children's Division had policies to ensure that its interactions with parents were conducted in accordance and compliance with the ADA.

In closing recommendations to the juvenile court, father's GAL stated that father was requesting visitation, not custody, and admitted that visitation should be supervised given father's intellectual disability.

The child's guardian ad litem and the Juvenile Officer both requested the child remain with his current placement, an unrelated family friend, because of the significant improvement in the child's behaviors and engagement in services.  Mother and father, through his GAL, requested the child be placed with the child's paternal grandmother who already served as father's chapter 475 guardian.[8]

---

[7] The previous case worker testified that she spoke with father's chapter 475 guardian two to three times about father's "situation."

[8]  It is important to note that the juvenile court did not exclude father's chapter 475 guardian in any way from the proceedings.  Children's Division was in contact with her beginning with the time the child was taken into protective custody.  Additionally, she testified at the disposition hearing on father's behalf.  She testified that when Children's Division initially inquired about her providing a home for the child, she was reluctant to arrange this without additional support (including financial) from Children's Division.  However, at the hearing, she testified she would be willing to have the child placed in her home.

In late October 2021, the juvenile court issued its order upon adjudication hearing. The juvenile court denied count two of the Juvenile Officer's amended petition, the count alleging that father neglected the child, stating that there was "insufficient evidence . . . adduced of a nexus between the father's disability and harm to the child." The order reiterated that the Juvenile Officer's first amended petition was sustained as to count one only.

In mid-November 2021, father filed written recommendations for disposition. In his recommendations, and as relevant to this appeal, father summarized federal regulations promulgated under Title II of the ADA and Section 504 of the Rehabilitation Act of 1973. Father argued that Children's Division violated those regulations in its treatment of him. Father requested the following:

> [that] any future services towards him be authorized only for the limited purpose of helping him to learn to be an effective parent, given his disability. [Father] asks Children's Division to determine (1) which of the services at its disposal may serve this limited purpose, and (2) whether any modifications to those services are necessary to ensure compliance with the ADA and Section 504.

Father also requested that Children's Division overhaul its procedures and services.

On December 14, 2021, the juvenile court entered its judgment, adopting the findings and recommendations of the juvenile court commissioner. The court found that "continued placement of the minor child in the home of either the mother or the father is contrary to his welfare as conditions of a potentially harmful nature continue to exist in the respective home environments." The court ruled:

> The Court finds that the father does not fit the definition of a "non-offending" parent pursuant to Section 211.037.1(5): the father is not seeking custody. Pursuant to subsection 211.037.2 RSMo the Court finds that placing the child in the father's custody and/or unsupervised contact between the father and the child is not in the child's best interest as the

8

father has been determined to be an incapacitated person/disabled person within the meaning of Section 475.010 RSMo and is subject to an adult guardianship in [a separate probate case] as he is unable to make safe decisions for himself. Additionally, the father's current residence does not allow children. The evidence adduced at disposition regarding past allegations of sexual abuse of a minor by the father are relevant for consideration of placement, services and safe contact as it pertains to the best interest and welfare of the child. The child himself is receiving therapeutic services to address inappropriate sexual boundaries and his best interest is served by his current placement.

The juvenile court concluded that the child was appropriately placed and that moving the child was not in his best interest. The juvenile court ordered services for father, with the goal of safe and meaningful visitation rather than reunification. The court-ordered services included a psychological evaluation with parenting assessment, parent aide services for visitation and parent education, parenting classes, and case management.

Father appeals.

## Standard of Review

We review a juvenile proceeding under the same standard applied in other court-tried civil cases and "will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *In re S.R.W.*, 647 S.W.3d 290, 292 (Mo. App. W.D. 2022); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We consider "the evidence in the light most favorable to the judgment, and we disregard all contrary inferences." *S.R.W.*, 647 S.W.3d at 292 (citation omitted).

## Legal Analysis

Father does not contend on appeal that the juvenile court erred in assuming jurisdiction over the child based on the allegations regarding mother. Instead, father

9

asserts that the juvenile court erred in appointing a GAL to represent him at the neglect proceeding and in ordering him to participate in certain services without consideration of his disability in violation of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973. We address each point separately.

## Point 1—Appointment of GAL

In his first point, father argues that the juvenile court erred in appointing him a GAL during the juvenile court proceedings because the appointment was a "usurpation" of the chapter 475 guardian that the probate court previously appointed for him. Father argues that the juvenile court "failed to follow the necessary procedures for replacement of a [c]hapter 475 [g]uardian, and invaded the [probate division's] exclusive and continuing jurisdiction," rendering the judgment "voidable as a matter of law."[9]

Father raises this issue for the first time on appeal. "'It is well recognized that a party should not be entitled on appeal to claim error on the part of the trial court when the party did not call attention to the error at trial and did not give the court the opportunity to rule on the question.'" *Brown v. Brown*, 423 S.W.3d 784, 787 (Mo. banc 2014) (quoting *Niederkorn v. Niederkorn*, 616 S.W.2d 529, 535–36 (Mo. App. E.D. 1981)). "This requirement is intended to eliminate error by allowing the trial court to rule intelligently and to avoid the delay, expense, and hardship of an appeal and retrial." *Id.* at 787-88 (citation omitted).

---

[9] Father's first point fails to identify which *Murphy v. Carron* ground he claims the judgment violates. 536 S.W.2d 30, 32 (Mo. banc 1976). Unlike his second point relied on, which we discuss below, we are able to discern that in his first point father is challenging the juvenile court's action of appointment of a GAL as a misapplication of the law.

10

This claim of error has not been adequately preserved for our review because father failed to object to the juvenile court's appointment of the GAL. At a hearing before adjudication and disposition, the juvenile court acknowledged that father had a guardian in a separate probate case, and stated it intended to appoint a GAL in the neglect proceeding to "help [him] through [the] process and represent [his] best interests," and father responded, "Okay." Father did not object at that time, or any time after alleging error in this appointment.

"We will not convict the trial court of error about which it has not been made aware." *Sanders v. City of Columbia*, 602 S.W.3d 288, 298 (Mo. App. W.D. 2020). Therefore, at best, father's first point is subject to plain error review.

> We have discretion to review plain errors affecting substantial rights pursuant to Rule 84.13(c) "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." We will not find plain error, however, unless there are substantial grounds for believing that the trial court committed error that is evident, obvious and clear and where the error resulted in manifest injustice or miscarriage of justice.

*Id.* (citation omitted).

In this case, we need not address whether a manifest injustice or a miscarriage of justice has occurred because we conclude the juvenile court did not commit error, plain or otherwise. Section 210.160.1 provides:

> In every case involving an abused or neglected child which results in a judicial proceeding, the judge *shall* appoint a guardian ad litem to appear for and represent: . . .
> (2) A parent who is a minor, or who is a mentally ill person or otherwise incompetent, and whose child is the subject of proceedings under sections 210.110 to 210.165 . . . .

(emphasis added). The child was the subject of abuse/neglect proceedings under sections 210.110 to 210.165. The Juvenile Officer filed the petition specifically

11

alleging neglect under section 211.031.1. Father, adjudicated by the probate court as "totally incapacitated and totally disabled," was an "incompetent" person as defined in section 210.160.1. *See* section 1.020(9) and section 475.010(11). Therefore, the juvenile court was not only authorized but required to appoint a GAL for father in the neglect proceeding under section 210.160.1.[10] The juvenile court committed no error, plain or otherwise, in this appointment.[11]

Father argues that the GAL appointment "usurped" the role of his court-appointed guardian in his probate case. Father also argues that the court did not follow the proper statutory procedures to "replace" his guardian.

Father's arguments lack merit. The juvenile court did not replace his chapter 475 guardian at any time, and the appointed GAL in the abuse and neglect proceeding did not "usurp" his chapter 475 guardian. A statutory guardian appointed under chapter 475 must, *inter alia*, "make decisions regarding the adult ward's support, care, education, health, and welfare . . .[and] . . . shall exercise authority only as necessitated

---

[10] *See also* section 211.462.2, which requires, in termination of parental rights proceedings, a court to appoint both counsel to represent a parent or child's guardian when counsel is requested and the parent or guardian is financially unable to employ counsel, and a GAL "[w]hen the parent is a minor or incompetent."

[11] Father cites Rule 52.02(k) to support his argument that the juvenile court erred in appointing a GAL because he already had an appointed chapter 475 guardian. Rule 52.02(k) provides:

> Whenever it shall be suggested or affirmatively appear to the court that any person not having a duly appointed guardian is incapable by reason of mental or physical infirmity of instituting suit or of properly caring for the person's own interests in any litigation brought by or against such person, the court shall inquire into the person's mental or physical condition for the purpose of the particular litigation and shall hear and determine such issue. If it is found to be proper for the protection of the person, the court may appoint a next friend or guardian ad litem for said person for the purpose of the particular litigation.

This rule does not assist father as the juvenile court was required to appoint a GAL in the neglect proceeding as provided in section 210.160. Additionally, father provides no authority that says a juvenile court cannot appoint a GAL in a separate juvenile court proceeding when the parent has a chapter 475 guardian in a probate matter.

by the adult ward's limitations." *See* section 475.120.3 RSMo Cum. Supp. 2021. Therefore, father's chapter 475 guardian had no specific duty to perform the GAL functions of protecting his rights, interest, and welfare during the neglect proceeding. *See State ex rel. Cramer v. Coleman,* 582 S.W.3d 110, 115-16 (Mo. App. E.D. 2019).[12]

Having concluded that the juvenile court committed no error, plain or otherwise, in appointing a GAL to represent father at the neglect proceeding, we need not address whether a manifest injustice or a miscarriage of justice has occurred. We would note, however, that during the neglect proceeding father was represented by two attorneys— a court appointed attorney and a GAL—with distinct roles to protect his interests. There is no allegation that father was prejudiced by the GAL's appointment or actions during the proceeding.

Father's first point is denied.

### Point 2—Father's Ordered Services

In his second point, father argues that the juvenile court's judgment "constitutes reversible error" by relegating him "to lesser services" and thus "overlooks [his] individual needs as a result of his longstanding diagnosis of Intellectual Development Disorder" in violation of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973.

In a court-tried civil case, the "judgment of the trial court *will be sustained* by the appellate court unless there is no substantial evidence to support it, unless it is

---

[12] In *Cramer,* the court concluded that, in a termination of parental rights proceeding, a party's guardian in a probate proceeding was under "no specific duty to perform the GAL functions of protecting the party's rights, interest, and welfare by, *inter alia*, being the party's legal representative in the termination of parental rights proceedings, being her advocate during the termination hearing, ascertaining her wishes, conducting necessary interviews, and appealing if necessary," citing section 211.462.3(1)-(3). *State ex rel. Cramer v. Coleman,* 582 S.W.3d 110, 115-16 (Mo. App. E.D. 2019). Accordingly, the court was required to separately appoint counsel. *Id.*

against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy*, 536 S.W.2d at 32 (emphasis added). *See also In re L.J.H.*, 604 S.W.3d 883, 886 (Mo. App. W.D. 2020). We can reverse a judgment "only on a *Murphy* ground." *Smith v. Great Am. Assur. Co.*, 436 S.W.3d 700, 704 (Mo. App. S.D. 2014). We presume the trial court's judgment is valid and an appellant has the burden to demonstrate that it is incorrect. *In re R.R.S.*, 573 S.W.3d 717, 730 (Mo. App. S.D. 2019).

Father fails to so demonstrate. Father's second point relied on and his argument suffer from several deficiencies. First, and most important, while father correctly states that our review is limited to the *Murphy* grounds, a review of whether the judgment is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or applies the law, father's point and argument fail to allege a ground upon which we can reverse and provide him relief. Father does not claim that there is not substantial evidence to support the juvenile court's judgment, that the judgment is against the weight of the evidence, or that the judgment erroneously declares or applies the law. Father states the judgment "constitutes reversible error."

"In order to comply with the rules of appellate procedure in Rule 84.04, a point on appeal must proceed under *one* of the *Murphy v. Carron* grounds, each of which requires a distinct analytical framework." *Ebert v. Ebert*, 627 S.W.3d 571, 580 (Mo. App. E.D. 2021). "If a point on appeal fails to identify which one of the *Murphy v. Carron* grounds applies, Rule 84.04 directs us to dismiss the point." *Id.*; *see* Rule

14

84.04(d)(1) (requiring a point relied on state concisely the legal reasons for the claim of reversible error).

We are left to guess on which *Murphy* ground father bases his argument in point two. We cannot speculate and craft father's allegation of error. "Each *Murphy* standard is proved differently from the others and is subject to different principles and procedures of appellate review. To speculate here would not only make us an advocate for [appellant], but would also run the risk of interpreting his contention differently than he intended." *T.G. v. D.W.H.*, 648 S.W.3d 42, 48-49 (Mo. App. E.D. 2022). "Compliance with *Murphy's* requirements is a prerequisite to success on appeal; without such compliance (as here), an appellant's argument simply cannot succeed." *Biggs by Next Friend Biggs v. Brinneman*, 598 S.W.3d 697, 702 (Mo. App. S.D. 2020).

We do have discretion to review non-compliant briefs *ex gratia* when the argument is "readily understandable." *Ebert,* 627 S.W.3d at 585; *see also Smith,* 436 S.W.3d at 704 n.4 (reviewing an appellant's point relied on that did not expressly identify a *Murphy* ground because it was discernable from the argument portion of the brief).

In this case we will not exercise that discretion for several reasons. First, we cannot readily discern the *Murphy* ground father is raising in his point relied on even when read with his argument in support. Next, in his briefing to this Court, father fails to even identify the court-ordered services and why these services are "lesser services" that overlook his needs due to his intellectual development disorder.

Finally, father tells us that this appeal "represents an opportunity for this Court to provide a framework which Family Courts across the state can use to ensure

15

Children's Division's treatment of parents with disabilities complies with Title II and Section 504." This is not our function in this appeal. We can review the judgment only to determine if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. If father believes that Children's Division has discriminated against him, the proper way to assert such a violation is by filing suit against Children's Division alleging a claim under the ADA and/or the Rehabilitation Act—not by asserting it during an abuse and neglect proceeding in juvenile court.

Father's second point is denied.

### Conclusion

The judgment of the juvenile court is affirmed.

_____
Janet Sutton, Judge

Hardwick, P.J. and Chapman, J. concur.