

# In the Missouri Court of Appeals

# Eastern District

## DIVISION TWO

IN THE INTEREST OF: D.G.J., JR.

)
)
)
)
)
)
)
)
)
)

No. ED110993

Appeal from the Circuit Court of
St. Louis County
22SL-JU00006

Honorable Jason D. Dodson

Filed: June 6, 2023

## OPINION

D.G.J., Jr. (Appellant) appeals from the St. Louis County Family Court's order granting

the St. Louis County Juvenile Officer's (Juvenile Officer) motion to dismiss a petition filed

against Appellant as a juvenile to allow prosecution in a court of general jurisdiction. We affirm.

## Background

The Juvenile Officer filed a petition against Appellant pursuant to Section 211.031.1(3)

RSMo (Cum. Supp. 2021),[1] alleging that Appellant, acting with others, "forcibly stole a safe

belonging to Darnisha Mims and in the course thereof [Appellant] and another participant in the

offense displayed or threatened the use of what appeared to be a deadly weapon or dangerous

instrument, to-wit: a handgun." Darnisha Mims (Mims) is Appellant's aunt. Late evening on

---

[1] All further statutory references are to RSMo (Cum. Supp. 2021).

November 1, 2021 – after Mims told Appellant he could stay with her earlier that day at his request – he and three other males entered her home armed with guns. They separated Mims from her three small children, ages seven, five, and three, and held them at gunpoint in separate rooms. They left with her safe.

The juvenile court found probable cause existed to believe Appellant's conduct as alleged in the petition and found placement in secure detention served both his best interest and that of the community. The Juvenile Officer subsequently filed a motion to dismiss the juvenile petition and requested a hearing pursuant to Section 211.071, to determine whether Appellant should be adjudicated pursuant to the juvenile code, and if not, then be prosecuted under the general law.

A certification hearing was held on July 15, 2022, and August 4, 2022, at which time Appellant was represented by counsel and was approximately eighteen-and-a-half years old. Deputy Juvenile Officer Deborah Hausler (Hausler) testified on behalf of the Juvenile Officer regarding her investigation and assessment of Appellant's alleged offense and recommended certification as an adult. She reviewed and was familiar with his social file, which contained numerous documents, including reports from Appellant's school and several incident reports from the detention center. She also conducted interviews with Appellant, his father, step-mother, and his mother. Hausler met with Appellant approximately twenty-three times, with a "lengthy" initial interview and shorter weekly meetings while he was in detention. She testified the alleged crimes involved viciousness, force and violence. Appellant had only one prior referral to the Juvenile Office for misdemeanor property damage, and Hausler did not believe the current offense demonstrated a repetitive pattern of offenses.

Hausler testified she considered Appellant's age, programs and facilities available to the St. Louis County juvenile court in making her recommendation; however, she did not consider

2

community-based supervision appropriate because of the serious nature of the allegations. She did not think a private residential treatment facility was appropriate because although several referrals were submitted he was not accepted due to his age and again because of the serious nature of the allegations. Hausler further considered whether Appellant could benefit from treatment and services within the juvenile court system, but this option was not feasible because Appellant exhibited significant behavior issues at the detention center. He made aggressive threats toward the staff, to include physical harm and death. He also had reports of physically kicking or hitting the door of his room, and in some instances had to be restrained and moved to a more secure area due to safety concerns.

Additionally, she testified commitment to the Division of Youth Services (DYS) was not appropriate because he could only be committed for five months until he turned nineteen years old, which she did not believe was sufficient time given the nature of the allegations. She acknowledged DYS could petition to keep Appellant in the system until he turned twenty-one, but DYS had not done so during her fifteen years in the juvenile court. Hausler testified Appellant had no mental health concerns, and his race did not have any effect on her recommendation.

Mims presented a statement to the court regarding the emotional injuries she and her children sustained from the events of November 1, 2021. She testified to the negative impact on her mental health as well as the trauma she and her children experienced from the incident. She claimed she fears for her children who are scared to leave the house at certain times of the day. Mims stated it is difficult for the children to "move on with their daily life and daily activities." Demetrius Mims, her husband, also testified at the hearing. He said their children cannot sleep through the night because of the experience.

3

Dr. Desiree Baumgartner (Dr. Baumgartner), a forensic child and adolescent psychologist, testified on behalf of Appellant. She completed a psychiatric interview with Appellant and diagnosed him with major depressive disorder, which she categorized as "severe" due to his symptoms and the significant recurrence of suicidal ideation. Dr. Baumgartner testified that based on her knowledge of adolescent brain development and its impact on behavior and impulse control she could opine that even if Appellant received treatment for only five months before being released due to his age, it would have much more of an impact on a juvenile his age than an adult. Dr. Baumgartner believed Appellant could still benefit from DYS services such as treatment for his depression with medication and counseling, in addition to help with his education and job skills training or placement in a residential treatment facility, even if only for a short time.

The court entered its judgment and order certifying Appellant for prosecution under the general law, ordering the petition dismissed, discharging Appellant from the juvenile court and ordering that Appellant be transferred to a court of general jurisdiction. This appeal follows.

## Discussion

In his sole point on appeal, Appellant alleges the hearing court abused its discretion in dismissing the juvenile cause of action and certifying Appellant to be prosecuted as an adult because the totality of the circumstances show that Appellant would have benefitted from treatment and rehabilitation programs available in the juvenile system.

### Standard of Review

Upon review of the court's decision to terminate jurisdiction over a juvenile offender we determine whether in light of the totality of the circumstances, the court abused its discretion. *Interest of T.D.S.*, 643 S.W.3d 510, 516 (Mo. App. E.D. 2021), *citing State v. Woodworth*, 941

S.W.2d 679, 697 (Mo. App. W.D. 1997). A juvenile court abuses its discretion if the ruling is clearly against the logic of the circumstances before it and is so unreasonable and arbitrary as to shock the sense of justice. *Id.* (internal citations omitted). "In reviewing a juvenile court's determination for an abuse of discretion, we will not reweigh the evidence or determine the reliability or credibility of the witnesses." *Interest of D.D.B.*, 660 S.W.3d 65, 74 (Mo. App. E.D. 2023). The facts in evidence and the reasonable inferences are viewed in the light most favorable to the trial court's judgment when reviewing the sufficiency of the evidence. *Id.* at 67. We will affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 74 (citing *Interest of J.M.C.*, 920 S.W.2d 173, 175 (Mo. App. W.D. 1996) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

*Analysis*

Pursuant to Section 211.071.6, the court shall consider the following, but not exclusive, criteria when determining whether to certify a juvenile for prosecution under the general law and the juvenile court need not give equal weight to each one:

(1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;

(2) Whether the offense alleged involved viciousness, force and violence;

(3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;

(4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates the child may be beyond rehabilitation under the juvenile code;

(5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;

5

(6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;

(7) The age of the child;

(8) The program and facilities available to the juvenile court in considering disposition;

(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and

(10) Racial disparity in certification.

Section 211.071.6; *T.D.S.*, 643 S.W.3d at 523-27.

Appellant argues that the focus in a certification proceeding is on the juvenile, not the conduct alleged in the petition. *See T.D.S.*, 643 S.W.3d at 520. However, Section 211.071 specifically directs the juvenile court to assess "all available information relevant to the criteria." Importantly, the first factor, the seriousness of the alleged offense, is a "dominant criterion among the ten factors." *T.D.S.*, 643 S.W.3d at 527. Moreover, the first three factors contain the most critical considerations in certification. *Id.*

In *T.D.S.*, this court affirmed the juvenile court's decision certifying a juvenile as an adult for charges similar to those at issue here. The juvenile was charged with robbery and resisting arrest for stealing a woman's vehicle at gunpoint. *Id.* at 524. In light of the seriousness of the offense, and the use of force and violence in an offense against a person, the juvenile court found "rehabilitation in the juvenile system impossible because the Division of Youth Services could retain jurisdiction only until the age of eighteen." *Id.* at 516. This court held the juvenile court did not abuse its discretion in looking at the totality of the circumstances and all ten factors, which favored certification. *Id.* at 527.

6

In examining the factors listed in Section 211.071.6, we find the juvenile court did not abuse its discretion but carefully considered each factor as it related to Appellant. The court found the allegations were "egregious," and involved viciousness, force and violence, specifically using a handgun to force Mims and her children into separate rooms during the robbery. The court further found the offense was one committed against a person - Appellant's own aunt and young cousins - and "as such, carries great weight in the Court's decision." In addition, Mims and her husband described how she and her family have been seriously traumatized by the incident. Thus, although no physical injury resulted from the alleged offense, personal injury to the victims did occur. *See D.D.B.*, 660 S.W.3d at 76 (robbery in which weapon was displayed to forcibly obtain property from victim resulted in personal injury, although no physical injury occurred). The dominant and critical considerations weighed in favor of certification, and we find no abuse of discretion by the juvenile court in certifying Appellant as an adult on these factors alone.

The court did not conclude its analysis with just the first three factors which strongly supported certification, but also considered the remaining factors as required by the statute. Regarding the fourth and fifth factors in Section 211.071.6, the juvenile court recognized this was not part of a repetitive pattern of offenses and noted Appellant's minimal history with the court, having only one prior referral for property damage. However, the court believed in Appellant's case this factor may actually indicate Appellant "is beyond rehabilitation" under the juvenile code. While the court did not expressly state its reasoning, the court made particular reference to Appellant's age and to the seriousness of the alleged offense. Given these facts and the mature nature of the alleged offense, the lack of a pattern of offenses could weigh in favor of certification, and the trial court did not abuse its discretion in making this determination. The

7

court also found Appellant's significant behavior issues, particularly incidents involving aggressive behavior and threats to staff while in juvenile detention "informative," and more specifically "demonstrates a complete disregard for court programming, structure, and services."

Regarding the sixth and seventh criteria, the juvenile court found Appellant was an "emotionally sophisticated and physically mature 18-year-old." Dr. Baumgartner did testify regarding adolescent brain development and its import in understanding impulse control and rehabilitation in juveniles. However, this is not one of the enumerated criteria the juvenile court is required to consider under Section 211.071.6. The statute does direct the court to assess "all available information relevant to the criteria," and the juvenile court "carefully considered" her opinion that Appellant would benefit from treatment in a juvenile facility.

However, after due consideration, the court rejected her testimony and concluded in light of the seriousness of the alleged offense, particularly the violent and vicious nature of the robbery of his aunt, Mims, and her young children at gunpoint, there was not a reasonable prospect of rehabilitation. Furthermore, the court found it significant that Appellant's age "greatly limits services or resources available" to provide any meaningful opportunity for rehabilitation.

Finally, the court discussed the eighth, ninth, and tenth factors, finding the community programs and the potential danger Appellant would pose by staying in the community did not weigh in favor of continued juvenile court jurisdiction. The court found that the serious allegations warranted Appellant's participation in programs for much longer than the timeframe he would be in the juvenile system. While there was testimony regarding the ability of DYS to petition to keep a juvenile in the system until he is twenty-one years old, Hausler testified in her fifteen years with the juvenile court she had not experienced DYS doing so. "We defer to the

juvenile court's findings regarding the time needed to rehabilitate a juvenile." *T.D.S.*, 643 S.W.3d at 526. A court may find, in its discretion, that a period of even five years may not be enough to rehabilitate a juvenile. *Id.* With respect to the tenth factor, racial disparity, the juvenile court merely noted it had considered the "available evidence as to racial disparity with certification," as required. This factor did not weigh in favor of or against certification.

The court reasoned that juvenile court jurisdiction and supervision were not appropriate due to the serious nature of the allegations. The court found that his age greatly limited services or resources available to provide him any meaningful opportunity for rehabilitation. The court concluded "protection of the community may require his removal from the community for a period of time longer than what DYS is able to accomplish," and rendered juvenile court jurisdiction improper.

"Each juvenile is unique, and resources which may benefit one are not necessarily helpful to another." *Id.* It is clear on this record that all the factors listed in Section 211.071.6 were thoughtfully analyzed and not just the alleged crime. Instead, the juvenile court focused on Appellant as an individual in light of his past, present and future conduct. The juvenile court did not abuse its discretion in finding the totality of the circumstances favored Appellant's certification as an adult. Appellant's point is denied.

**Conclusion**

The judgment of the juvenile court is affirmed.

Lisa P. Page, Presiding Judge

Thomas C. Clark, II, J. and
Renée D. Hardin-Tammons, J., concur.

9